## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

KELVIN DOWELL,

     Plaintiff,

vs.                                                    Civil No. 1:22-cv-01009-SHM-tmp

NURSE DAVID KENT MATHIS, et al.,

     Defendants.

## ORDER DIRECTING THE CLERK TO MODIFY THE DOCKET, DISMISSING THE SECOND AMENDED COMPLAINT (ECF NO. 14), WITH PREJUDICE IN PART; DENYING LEAVE TO AMEND THE CLAIMS DISMISSED WITH PREJUDICE; PROCEEDING DELAY AND DENIAL OF MEDICAL CARE CLAIMS AGAINST CERTAIN DEFENDANTS; AND DIRECTING CLERK TO ISSUE SERVICE OF PROCESS

On January 13, 2022, Plaintiff Kelvin Dowell[1] filed a *pro se* complaint under 42 U.S.C. § 1983.  (ECF No. 1.)    Dowell asserted claims of gross negligence, denial of medical treatment, and medical malpractice associated with the treatment of his ruptured appendix.  (*See* ECF No. 1 at PageID 4-18.)  On June 27, 2022, the Court entered an order dismissing complaint without prejudice, directed Dowell to file an amended complaint, and denied the pending motions.  (ECF No. 11.)

On July 25, 2022, Dowell filed an amended *pro se* complaint under 42 U.S.C. § 1983. ("Amended Complaint", ECF No. 12.)  On August 8, 2024, the Court entered an order dismissing the Amended Complaint without prejudice and directed Dowell to file a second amended

---

[1] Dowell is presently incarcerated at the Northwest Correctional Complex (the "NWCX") in Tiptonville, Tennessee. *See* Tennessee Department of Correction, Felony Offender Information, https://foil.app.tn.gov/foil/search_additional.jsp (last accessed Feb. 26, 2025).

complaint.  (ECF No. 13.)  On September 9, 2024, Dowell filed a second amended complaint. ("Second Amended Complaint", ECF No. 14.)

The Second Amended Complaint is construed to allege claims of delay and denial of medical care in violation of the Eighth Amendment.  (ECF No. 14 at PageID 232-245.)  Dowell sues ten (10) Defendants: (1) NWCX Nurse David Kent Mathis; (2) NWCX Nurse Beau Rinker; (3) NWCX Dr. Mark Fowler; (4) NWCX Health Administrator Leslie Jones; (5) NWCX Associate Warden of Treatment Steve Jones; (6) Tennessee Department of Correction ("TDOC") Health Director Kenneth Williams[2]; (7) TDOC Health Director Brenda Boyd[3]; (8) NWCX Sergeant Damon Matthew Sanford; (9) NWCX Nurse Tiffany Mathis Roney a.k.a. Tiffany Parker; and (10) NWCX Sergeant Paul Jackson.  (ECF No. 14 at PageID 227, 229-32.)[4]  Dowell sues the Defendants in their individual capacities.  (*See* ECF No. 14 at PageID 229-32.)

Dowell seeks: (1) a declaration that Defendants violated Dowell's Constitutional rights under the Eighth Amendment; (2) compensatory damages for "physical, mental, and emotional injuries against each defendant jointly and severally" in the amount off one hundred thousand dollars ($100,000.00); (3) punitive damages for "physical, mental, and emotional injuries against each defendant jointly and severally" in the amount of one hundred thousand dollars

---

[2] Dowell lists Williams's employer as Centurion and TDOC in the Amended Complaint. (*See* ECF No. 14 at PageID 231, 236.)  According to TDOC's website, Williams was employed by TDOC as a medical director.  *See* https://www.tn.gov/attorneygeneral/news/2020/8/24/pr20-33.html (last accessed Feb. 26, 2025).

[3] Dowell lists Boyd's employer as Centurion and TDOC in the Amended Complaint.  (*See* ECF No. 14 at PageID 231, 236.)  According to Boyd's LinkedIn profile, she has been employed by TDOC as Director of Clinical Services since March 2015.  *See* https://www.linkedin.com/in/brenda-j-boyd-64a129101 (last accessed Feb. 26, 2025).

[4] The Clerk is DIRECTED to modify the docket to list the defendants as they are named in the Second Amended Complaint.

($100,000.00); and (4) any other equitable relief deemed necessary in the interest of justice. (ECF No. 14 at PageID 245-46.)

For the reasons explained below, the Court: (1) DISMISSES the Second Amended Complaint in part WITH PREJUDICE for failure to state a claim to relief (ECF No. 14); (2) PROCEEDS the delay and denial of medical care claim against Dr. Fowler and Leslie Jones in their individual capacities; and (3) DENIES leave to amend the claims dismissed with prejudice.

## I.    **BACKGROUND**

The Second Amended Complaint is twenty-two typed and hand-written pages (ECF No. 14 at PageID 227-248) with fifty-nine (59) pages of exhibits (ECF No. 14-1 at PageID 249-307 (inmate grievances and responses, correspondence from Dowell to various Defendants about medical treatment, and grievance committee meeting minutes) (the "Exhibits").) The Second Amended Complaint's lengthy narrative contains allegations about events occurring from November 12, 2020, through October 7, 2021. (ECF No. 14 at PageID 232-41.)

Dowell alleges he was at his "institutional job" on November 12, 2020, when he began to feel exhausted. (*Id.* at PageID 232.) Dowell returned to his cell and began vomiting after he attempted to use the restroom. (*Id.*) Dowell alleges he filled out a "sick call request" for constipation pain but never received a response and was not issued an inmate pass to be seen by medical. (*Id.*)

On November 13, 2020, Dowell placed an emergency sick call, and Nurse Mathis treated Dowell in the prison clinic. (*Id.*) Dowell explained to Mathis how Dowell "started to feel pain in his abdomen area." (*Id.*) Mathis determined Dowell was suffering from constipation and gave Dowell a laxative. (*Id.*)

3

On November 15, 2020, Dowell felt "more exhaust[ion], [was] experiencing extreme pain making it hard to stand or walk, and he felt pain when attempting to eat food." (*Id.*) On November 16, 2020, Dowell signed up for sick call, but did not receive a pass to be seen by medical. (*Id.* at PageID 233.) On November 17, 2020, Dowell's pain caused him to lose sleep. (*Id.*) Dowell placed an emergency sick call and was seen by Nurse Rinker. (*Id.*) Dowell informed Rinker that Dowell's pain had increased since he was seen by Mathis.[5] (*Id.*) Rinker took a blood and urine sample from Dowell and gave him lactulose and Tylenol for his symptoms. (*Id.*) Dowell returned to his cell and vomited. (*Id.*)

On November 18, 2020, Dowell told his unit officer that "his pain had become unbearable" and Dowell was sent to the prison clinic. (*Id.*) Dowell alleges that he was given an x-ray in the prison clinic and sent back to his unit. (*Id.*) On his way back to his unit, Dowell's pain "forced" him to lie down on the ground. (*Id.*) Dowell alleges that NWCX unit manager Yolanda Ward and inmate Timothy Walker saw Dowell lying on the ground.[6] Dowell alleges that Walker told Dowell that he might need to contact a family member who could contact the NWCX warden about Dowell's condition. (*Id.*) Dowell alleges he woke up later in the evening and could barely sit up. (*Id.*) Dowell alleges he went to the prison medical window to ask for pain medication, but his request was denied. (*Id.*) Dowell does not allege to whom he spoke or who denied his request for pain medication. (*Id.*) Dowell alleges another inmate, Rashii Brisbon, helped Dowell walk back to his unit. (*Id.*) When Dowell returned to his unit, he called his sister, Lakedia Dowell. (*Id.*)

---

[5] Dowell refers to Mathis as "Mathis" or "Kent" throughout the Second Amended Complaint. (*See* ECF No. 14 at PageID 233.) For clarity, the Court will refer to Nurse David Kent Mathis as "Mathis."

[6] Dowell does not name Ward, Genovese, Johnson, Choates or Daley as defendants in his Second Amended Complaint.

Dowell alleges his sister then contacted NWCX Warden, Kevin Genovese, to inform him about Dowell's medical condition. (*Id.*)

On November 19, 2020, NWCX Chief of Security Jackie Johnson and Sergeant Robert Choates entered Dowell's cell to ask about his condition. (*Id.*) Dowell alleges he told Johnson and Choates about his medical history. (*Id.*) Johnson and Choates had another inmate, Dan Antonio Jones, take Dowell to the medical clinic in a wheelchair. (*Id.*) Mathis and Nurse Danielle Daley examined Dowell. (*Id.*) Dowell's abdomen was red and swollen and he had a fever of 101 degrees. (*Id.* at PageID 233-34.) Dowell was given a shot and transported to West Tennessee Healthcare (the "WTNH") in Dyersburg, Tennessee. (*Id.* at PageID 234.)

After Dowell had been examined by a nurse at WTNH, he was told "he was suffering from a ruptured appendix where an abscess had formed causing infection build up." (*Id.*) Dowell was then transferred to Regional One in Memphis, Tennessee. (*Id.*)

At Regional One, Dowell was given I.V. antibiotics and taken to surgery. (*Id.*) Dowell was told he could not have surgery until his infection decreased. (*Id.*) Dowell alleges he received I.V. antibiotics for five days while at Regional One and was told on November 24, 2020, that he would be returned to NWCX. (*Id.*) Dowell alleges he was told the follow-up treatment plan was for Dowell to receive four to six weeks of antibiotics and return to Regional One for an appendectomy and the removal of any remaining infection. (*Id.*)

When Dowell returned to NWCX, he was seen by Nurse Rinker. (*Id.*) Rinker told Dowell that the antibiotic Dowell was prescribed was not available and that Dowell would receive a substitute antibiotic. (*Id.*) On November 25, 2020, Dowell was seen by Dr. Fowler and received an antibiotic at the morning medical call. (*Id.*) Dowell alleges he told Dr. Fowler about the medical events that had occurred from November 12 through 25, 2020. (*Id.*) Dowell asked Dr.

Fowler about the antibiotic he was prescribed at Regional One and the follow-up surgery.  (*Id.*)
Dr. Fowler told Dowell that Dr. Fowler was sure Dowell had received enough antibiotics at
Regional One.  (*Id.*)  On November 26, 2020, Dowell received antibiotics that morning and
evening.  (*Id.*)  On November 27, 2020, Dowell was given antibiotics in the morning and told by
an unknown nurse that he would not be receiving any additional antibiotics.  (*Id.*)

Dowell then filled out an inmate inquiry to NWCX Health Administrator Leslie Jones
explaining that Dowell had been prescribed an antibiotic and that he needed to continue receiving
antibiotics.  (*Id.* at PageID 235*, see* ECF 14-1 at PageID 249.)  On November 30, 2020, Leslie
Jones responded to the inquiry, saying that Dowell's antibiotic had been ordered and would be
received on December 1, 2020.  (*Id.*)  Leslie Jones also noted that Dowell had been assessed for
signs of infection and no signs were present.  (*Id.*)

On November 30, 2020, Dowell "awoke with a thumping pain in his lower abdomen area."
(ECF No. 14 at PageID 235.)  Dowell was seen at the prison clinic and given Tylenol and
Lactulose.  (*Id.*)  An unidentified nurse at the clinic told Dowell to come back to the medical
window the following day and his antibiotics should be there.  (*Id.*)  The same morning, Dowell
spoke to the NWCX Associate Warden of Treatment, Steve Jones, and told Steve Jones that
Dowell was not receiving his prescribed antibiotics.  (*Id.*)  Steve Jones told Dowell that he would
"contact the clinic and have them see [Dowell]."  (*Id.*)

On December 1, 2020, Dowell went to the medical window for his antibiotics.  (*Id.*)
Dowell alleges a Nurse Melissa walked away from the window and asked other medical personnel
to explain to Dowell what was "going on with his medication."  (*Id.*)  An unknown nurse told
Dowell that his prescription had been "messed up" by Dr. Fowler, needed to be filled again, and
would be there on Thursday, December 3, 2020.  (*Id.*)

On December 2, 2020, Dowell was seen by Dr. Fowler in the medical clinic for "abdomen pain spreading to [Dowell's] groin area." (*Id.*) Dr. Fowler gave Dowell stool softeners. (*Id.*) When Dowell asked Dr. Fowler about receiving his antibiotics, Dr. Fowler told Dowell again that he was "sure they gave you enough at the hospital through I.V." (*Id.*) Dowell filed an inmate grievance form complaining about the medical treatment he was receiving at NWCX. Dowell said that his health was deteriorating since returning to NWCX and that he was not receiving his prescribed antibiotics. (*Id.*, *see* ECF 14-1 at PageID 252-257.) On December 3, 2020, Dowell received thirty "antibiotics" and thirty stool softeners. (ECF No. 14 at PageID 236.) On December 7, 2020, NWCX Health Administrator Leslie Jones responded to Dowell's grievance, thanking Dowell for bringing the matter to her attention and stating that "appropriate action will be taken." (ECF Nos. 14 & 14-1 at PageID 236, 258.)

On December 10, 2020, Dowell had muscle and joint pain and went to sick call. (ECF No. 14 at PageID 236.) On December 15, 2020, Dowell sent an inmate information request to Leslie Jones, notifying her that Dowell had only two more days of antibiotics and asking if Dowell would receive a refill or have surgery. (*Id.*) Dowell alleges he never received a response from Leslie Jones. (*Id.*)

On December 23, 2020, Dowell signed up for sick call, asking to see a mental health professional for "anxiety, depression, and feelings of helplessness." (*Id.*) Dowell alleges he was worried about whether he would receive his antibiotics and surgery. (*Id.*) Dowell alleges he mailed letters to TDOC Health Directors Williams and Boyd, telling them about his medical treatment at NWCX and seeking their assistance. (*Id.*, *see* ECF 14-1 at PageID 262-265.)

On December 24, 2020, Dowell received a pass to be seen by mental health. (ECF No. 14 at PageID 236.) Dowell attempted to see mental health and was told by Unit Officer Lauren Baker

that Sergeant Sanford said Dowell could not go to mental health "because there were not any callouts due to it being Christmas Eve." (*Id.*)

On January 20, 2021, Dowell signed up to be seen by medical for mucus in his stool and worsening constipation, but Dowell did not receive a pass to see medical. (*Id.*) On January 26th and 29th, 2021, Dowell went to sick call for "ongoing abdomen pain and constipation complications." (*Id.* at PageID 237.) On February 5, 2021, Dowell was seen by Nurse Hamilton who told Dowell that she would prescribe something for his constipation, but that she did not know when Dowell would receive the medication. (*Id.*)

On February 28, 2021, Dowell was sent to prison medical by Unit Officer Kayla Sexton because Dowell had "growing abdomen pain all day[.]" (*Id.*) Dowell was seen by Nurse Roney. (*Id.*) Roney gave Dowell a cup of water and a cup of lactulose and told Dowell to drink them. (*Id.*) Dowell told Roney that lactulose had caused him to vomit in the past. (*Id.*) Roney told Dowell "Go ahead and drink it in front of me and stay near the toilet when you get back to your cell, you're just constipated, they will call for you to come up here tomorrow." (*Id.*)

After Dowell returned to his cell, another inmate, Jerome Teats, came to check on Dowell. (*Id.*) Dowell asked Teats to tell Unit Officer Sexton that Dowell needed to go back to medical because Dowell was not getting better. (*Id.*) Sexton came to Dowell's cell and told Dowell that the clinic said Dowell would need to fill out a sick call to be seen the next day. (*Id.*) Dowell alleges his condition continued to worsen, and he went to ask Sexton, who was talking to Unit Officer Stennet, if they could ask the clinic to "check his vitals." (*Id.*)

Minutes later, Jackson and Officer Baggett entered Dowell's unit. (*Id.*) Dowell alleges Jackson told Dowell "[T]o go back to his cell because he was not going back to the clinic." (*Id.*) Dowell told Jackson that Dowell could "hardly walk and his stomach pain was getting more (sic)

worse[.]"  (*Id.*)  Dowell alleges he attempted to tell Jackson his medical history.  (*Id.*)  Jackson told Dowell that Roney had already seen Dowell, and there was nothing else Roney could do for Dowell.  (*Id.*)  Jackson told Dowell that, if he did not go back to his cell, Dowell would be carried "to the hole (segregation)."  (*Id.*)  Jackson then told other inmates to carry Dowell to his cell or Dowell would be carried to the hole.  (*Id.*)

Two inmates, Fleming and Craft, picked Dowell up and attempted to carry him to his cell. (*Id.* at PageID 238.)  The inmates dropped Dowell, picked him up and placed him on a table.  (*Id.*) Dowell then fell to the floor.  (*Id.*)  After Dowell's fall, Nurse Andis and Lieutenant Butler came into the unit pushing a wheelchair.  (*Id.*)  Nurse Andis wheeled Dowell to the clinic and checked his vitals.  (*Id.*)  Nurse Andis noticed that Dowell was not having bowel sounds and administered an enema to help Dowell have a bowel movement.  (*Id.*)  Dowell began to vomit and Nurse Andis placed Dowell in an observation cell.  (*Id.*)  Nurse Andis observed that Dowell was "emitting mucus while attempting to have a bowel movement[.]"  (*Id.*)  Nurse Andis had Dowell transported to WTNH.  (*Id.*)

While at WTNH, Dowell was seen by Dr. Hall.  (*Id.*)  Dr. Hall asked Dowell about his last visit to WTNH and about how his ruptured appendix "turned out."  (*Id.*)  Dowell told Dr. Hall that Dowell had not received the surgery and Dr. Hall told Dowell, "[T]hat was real risky leaving it in there."  (*Id.*)  Dowell was given a C.T. scan and was told that "his results revealed intestinal problems and that he had developed what's known as a megacolon which likely came from the infection from his appendix episode."  (*Id.*)

On March 7, 2021, Dowell signed up for sick call because his stool was covered in blood.[7] (*Id.*) When Dowell was seen in the clinic by an unknown nurse, Dowell was told he was scheduled to see the doctor on March 12, 2021, and that Dowell would need to explain his symptoms to the doctor. On March 12, 2021, when Dowell did not receive a pass to see the doctor, Dowell asked his job supervisor to call the clinic for him. (*Id.*) The supervisor told Dowell that Mathis said Dowell's appointment had been cancelled "because the nurses went to a funeral." (*Id.*) Dowell's supervisor told Dowell that he would "contact the warden" and that Dowell could go back to his unit if he were not feeling well. (*Id.*)

When Dowell went back to his unit, Officer Sexton told Dowell he was needed in the medical clinic. (*Id.*) In the medical clinic, Nurse Daley examined Dowell. (*Id.*) During Dowell's exam, Dr. Fowler came into the room and told Dowell that he needed "to stop filing all these grievances, requests and complaints and talking to the A.W.T. [Associate Warden of Treatment Steve Jones] because its (sic) not going to make your problem any better, after over twenty years in the medical field there's really nothing wrong with you, nothing life threatening anyways, so you need to stop running around acting like you're dying! You need to stop telling people your appendix ruptured and something's wrong with your colon, ain't nothing wrong with you, you're just constipated, you need to stop writing all that junk down acting like you're going to have an article in the reader's digest one day." (*Id.* at PageID 238-39.) Dr. Fowler examined Dowell and told him he had a hemorrhoid. (*Id.* at PageID 239.)

On March 17, 2021, Dowell sent a two-way message to Steve Jones asking about his medical condition. (*Id.*, *see* ECF No. 14-1 at PageID 266.) On March 19, 2021, Dowell was seen

---

[7] It is not clear from Dowell's allegations when he returned to NWCX from WTNH. (*See* ECF No. 14 at PageID 238.)

by Dr. Fowler and explained to Dr. Fowler that his bowel movements were not improving.  (ECF No. 14 at PageID 239.)  Dr. Fowler told Dowell to increase his fiber intake.  (*Id.*)  When Dowell questioned Dr. Fowler about receiving a fiber diet, Dr. Fowler told Dowell to "drink plenty of water."  (*Id.*)  On March 23, 2021, Steve Jones responded to Dowell's two-way message saying that, if Dowell were experiencing medical problems, Dowell should "put in a request for sick call to be evaluated."  (*See* ECF No. 14-1 at PageID 266.)

On April 9, 2021, Dowell was seen by Dr. Fowler and explained that his bowel movements were not improving.  (ECF No. 14 at PageID 239.)  Dr. Fowler told Dowell that Dowell would be receiving Miralax.  (*Id.*)  By April 21, 2021, Dowell had not received Miralax and asked an unnamed nurse at the medical window why it was taking so long to receive Miralax.  (*Id.*)  Dowell was told to sign up for a sick call.  (*Id.*)  On April 22, 2021, Dowell asked about his Miralax at the medical window and was told that NWCX does not "get prescribed [M]iralax."  (*Id.*)

On April 23, 2021, Dowell filed an inmate grievance about his medical condition and the delay in his treatment.  (*Id.*, *see* ECF No. 14-1 at PageID 270-71.)  On May 3, 2021, Leslie Jones responded to the inmate grievance, saying "you must address your concerns with your provider. The provider will see you on 5/5/21."  (ECF No. 14-1 at PageID 273.)

On May 30 and June 1, 2021, Dowell signed up for sick call for pain and blood when he attempted to use the restroom, but Dowell did not receive a pass to see medical.  (ECF No. 14 at PageID 239.)

On June 16, 2021, Dowell experienced "cold chills, lightheadedness, and vomiting" and asked Unit Officer Ramos if he could be seen at the clinic for an emergency visit.  (*Id.* at PageID 240.)  Ramos advised Dowell that Rinker said Dowell would have to fill out a sick call and be seen the next day.  (*Id.*)  Dowell explained to Ramos that Dowell "had been experiencing pain all day

and it was getting unbearable." (*Id.*)  Ramos advised Dowell that Rinker said Dowell would have

to pay five dollars.  (*Id.*)  Dowell told Ramos he was willing to pay.  (*Id.*)  Ramos then advised

that Rinker said Dowell would have to come the next day to be seen.  (*Id.*)  Dowell filled out an

inmate grievance and labeled it as an "emergency" and turned the grievance into Counselor Mosby.

(*Id.*)  That night, Unit Officer Mills asked Dowell if he needed to go to the clinic.  (*Id.*)  Dowell

told Mills that his "whole body was aching and that if the clinic was willing to see him[,] he would

go." (*Id.*)  Dowell was seen in the clinic by Nurse Andis who gave him Covid-19 and flu tests.

(*Id.*)  Nurse Andis gave Dowell Tylenol and told him to come to the medical window the next

morning for more Tylenol.  (*Id.*)

On June 18, 2021, when Dowell woke up to urinate, a "yellowish white liquid began

discharging." (*Id.*)  Dr. Fowler collected a urine sample from Dowell later that day.  (*Id.*)  Dr.

Fowler saw Dowell's urine and said it looked like "something" was in it. (*Id.*)  Mathis gave Dowell

a shot and antibiotics.  (*Id.*)

On August 12, 2021, Dowell was seen by an unnamed gastrointestinal specialist who

recommended that Dowell be placed on a high fiber diet and that he receive a colonoscopy.  (*Id.*)

On August 23, 2021, Dowell saw Dr. Fowler and explained that, after Dowell ate, he experienced

"tight knotty feelings in his stomach." (*Id.*)  On August 25, 2021, Dowell sent a two-way message

to Leslie Jones and Dr. Fowler requesting a different laxative because lactulose made him vomit.

(*Id.* at PageID 241, *see* ECF No. 14-1 at PageID 277.)  Dowell did not receive a response.  (ECF

No. 14 at PageID 241.)

On September 13, 2021, Dowell wrote Steve Jones asking Jones to "look into" the two-

way message Dowell had sent to Leslie Jones and Dr. Fowler requesting a different laxative.  (ECF

Nos. 14 & 14-1 at PageID 241, 278.)  Dowell received a response from Leslie Jones that Dowell

would be receiving a colonoscopy on October 6, 2021.  (*Id.*)

On September 21, 2021, Dowell signed up for sick call for pain and burning in his

abdomen.  (ECF No. 14 at PageID 241.)  Dowell did not receive a pass to see medical.  (*Id.*)  On

September 27, 2021, Dowell was transferred to TDOC Deberry Special Needs Facility.  (*Id.*)  On

October 7, 2021, Dowell had a colonoscopy at Nashville General Hospital.  (*Id.*)  Dowell was told

he had "intestinal and hemorrhoid problems."  (*Id.*)

Based on the facts above, Dowell alleges that Defendants acted with deliberate indifference

to his serious medical need in violation of his Eighth Amendment rights.  (ECF No. 14 at PageID

242-45.)

## II.    SCREENING THE COMPLAINT

### A.  LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of

it, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief
> may be granted; or
> (2) seeks monetary relief from a defendant who is immune from
> such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court

applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v.

Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57

(2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  Under those standards, the Court

accepts the complaint's "well-pleaded" factual allegations as true and then determines whether

the allegations "plausibly suggest an entitlement to relief."  *Williams v. Curtin*, 631 F.3d 380, 383

(6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory

allegations are true, because they are not "factual," and all legal conclusions in a complaint "must

be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  A complaint must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief."  It also requires

factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."

*Twombly*, 550 U.S. at 555 n.3 (quoting Fed. R. Civ. P. 8(a)(2)).

Courts screening cases accord more deference to *pro se* complaints than to complaints

drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards than formal

pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d

at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants are not

exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d

591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir.

2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading

requirements" and stating, "a court cannot 'create a claim which [a plaintiff] has not spelled out

in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.

1975))).

## B.  <u>REQUIREMENTS TO STATE A CLAIM UNDER § 1983</u>

Dowell sues under 42 U.S.C. § 1983.  (ECF No. 14 at PageID 227.)  To state a claim under

§ 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the

"Constitution and laws" of the United States, and (2) that a defendant caused harm while acting

under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

### III. <u>ANALYSIS</u>

Dowell alleges Eighth Amendment claims for the delay and denial of medical care against Mathis, Rinker, Fowler, Leslie Jones, Roney (the "Centurion Defendants"), Williams, Boyd (the "TDOC Defendants", and Steve Jones, Sanford and Jackson (the "NWCX Defendants") during Dowell's incarceration at NWCX.  (*See* ECF No. 14.)

The Claims about the denial or delay of medical care are reviewed under the Eighth Amendment, which prohibits cruel and unusual punishments.  *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" . . . proscribed by the Eighth Amendment."  Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Id.* at 106.

Eighth Amendment claims consist of both objective and subjective components.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.  The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that the official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless that official subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

### A. **Centurion Defendants**

Centurion is a private entity contracted to provide medical care to inmates in TDOC facilities. *See Weir v. Centurion*, No. 3:19-CV-00131, 2019 WL 1434658, at *3 (M.D. Tenn. Mar. 28, 2019). Dowell alleges that Mathis, Rinker, Fowler, Leslie Jones, and Roney are employees of Centurion. (ECF No. 14 at PageID 229-231.) Because Centurion performs a traditional state function, the provision of medical services to prison inmates, Centurion and its employees act under color of state law for purposes of Section 1983. *See Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015).

### 1. **Mathis**

Dowell alleges Mathis diagnosed Dowell with constipation and gave Dowell laxatives on November 13, 2020. (ECF No. 14 at PageID 232.) Dowell alleges he was seen by Mathis and another nurse on November 19, 2020, was given a shot, and sent to WTNH. (*Id*. at PageID 233-34.) Mathis told Dowell's job supervisor on March 12, 2021, that Dowell's medical appointment had been cancelled because the nurses had gone to a funeral. (*Id.* at PageID 238.) Mathis gave Dowell a shot of antibiotics on June 18, 2021. (*Id.* at PageID 240.)

Dowell alleges Mathis showed "deliberate indifference" to Dowell's serious condition by failing to "refer [Dowell] to [a] qualified doctor" and by allowing Dowell's condition to worsen causing Dowell to experience extreme pain, lack of sleep, inability to eat, and a ruptured appendix. (*Id.* at PageID 242.) Dowell alleges Mathis "posed a substantial risk of harm [and] subject[ed] [Dowell] to unnecessary infliction of pain in violation of the Eighth Amendment…." (*Id.*)

At most, Dowell's allegations against Mathis amount to a disagreement about treatment. Disagreement about the course of treatment is not a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Negligence or medical malpractice does not amount to a constitutional violation. *See Farmer*, 511 U.S. at 835-36; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see Jones v. Muskegon County*, 625 F.3d 935, 944–46 (6th Cir. 2010) (holding that treating an inmate, who turned out to have cancer, for constipation when some symptoms but not others were consistent with constipation amounted to negligence, not deliberate indifference).

Where a prisoner desires more aggressive medical treatment but at no point was denied treatment, summary judgment for the prison officials is proper. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *See Reilly v. Vadlamudi*, 680 F.3d 617, 625-27 (6th Cir. 2012) (holding neither defendant deliberately indifferent where the doctor examined the plaintiff before his serious symptoms manifested themselves and where the nurse referred the plaintiff to an eye doctor based on his complaints of eye pain).

Dowell's factual allegations about Mathis do not permit the inference that Mathis was deliberately indifferent to Dowell's medical needs. Mathis provided treatment on November 13, 2020, and on November 19, 2020. On November 19, 2020, Dowell was sent to WTNH after Mathis examined him with Daley. On June 18, 2021, Mathis gave Dowell a shot and antibiotics when Fowler examined Dowell. Although Dowell may not agree with the treatment provided, Mathis did not deny Dowell treatment or unnecessarily delay it.

Dowell has not alleged facts sufficient to establish the subjective component of a deliberate indifference claim based on Mathis's actions. Dowell's claim for denial and delay of medical care against Mathis is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### 2.  **Rinker**

Dowell alleges that, on November 17, 2020, he placed an emergency sick call and was seen by Nurse Rinker who took a blood and urine sample from Dowell and gave Dowell a laxative and Tylenol. (ECF No. 14 at PageID 233.) Dowell alleges he explained to Rinker that Dowell's pain had increased since he had seen Mathis on November 13, 2020. (*Id.*) Dowell alleges that he vomited when he returned to his cell. (*Id.*)

After Dowell returned from Regional One, Rinker told Dowell that the antibiotic prescribed at Regional One was unavailable and that Dowell would be given a substitute.  (*Id.* at PageID 234.)  Rinker's only other conduct occurred on June 16, 2021, when Rinker told Dowell's unit supervisor that Dowell would have to sign up for sick call and be seen the following day after Dowell complained he was experiencing pain, cold chills, lightheadedness, and vomiting.  (*Id.* at PageID 240.)  However, Dowell was seen by Nurse Andis later that night.  (*Id.*)

Dowell alleges Rinker showed "deliberate indifference" to Dowell by "contributing to and continuing to delay" Dowell's requests for medical care.  (*Id*. at PageID 242.)  Dowell alleges Rinker's "decision to delay further qualified medical care" caused Dowell's condition to worsen to a ruptured appendix.  (*Id.*)  Dowell alleges Rinker delayed Dowell's "access to medical care" on June 16, 2021, when Dowell complained of body pain and that Rinker's delay showed "deliberate indifference" in violation of Dowell's Eighth Amendment rights.  (*Id.*)

Dowell's allegations against Rinker amount to a disagreement about treatment.  Rinker did not deny Dowell treatment.  Dowell has not alleged facts sufficient to establish the subjective component of a deliberate indifference claim based on Rinker's actions.  "[A] short delay by itself in administering medical treatment—even an unexplained delay—is not enough to demonstrate deliberate indifference to a defendant's medical needs, but instead evinces negligence." *Barner v. Mackie*, No. 17-1608, 2017 U.S. App. LEXIS 22082, at *7 (6th Cir. Nov. 2, 2017); *see Santiago v. Ringle*, 734 F.3d 585, 592-93 (6th Cir. 2013).

Dowell's claim for denial or delay of medical care against Rinker is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### 3. **Dr. Fowler**

Dowell alleges he was seen by Dr. Fowler on November 25, 2020, after returning from Regional One for a ruptured appendix.  (ECF No. 14 at PageID 234.)  Dowell alleges he received an antibiotic that morning and that, when Dowell asked Dr. Fowler about the antibiotics prescribed at Regional One and Dowell's follow-up surgery, Dr. Fowler told Dowell that Dr. Fowler was sure Dowell had received enough antibiotics while at the hospital.  (*Id.*)  Dowell alleges that, on December 1, 2020, he was told "Dr. Fowler messed up on your prescription so it had to be filled out again" causing a delay in Dowell receiving his antibiotics.  (*Id.* at PageID 235.)  On December 2, 2020, Dr. Fowler saw Dowell for abdominal pain that was spreading to Dowell's groin.  (*Id.*)  Dr. Fowler gave Dowell stool softeners and told Dowell again that Dr. Fowler was sure Dowell was given enough antibiotics while at Regional One.  (*Id.*)

On March 12, 2021, Dr. Fowler saw Dowell after Dowell complained of having bloody stool.  (*Id.* at PageID 238.)  Dr. Fowler told Dowell to "to stop filing all these grievances, requests and complaints and talking to the A.W.T. [Associate Warden of Treatment Steve Jones] because its (sic) not going to make your problem any better, after over twenty years in the medical field there's really nothing wrong with you, nothing life threatening anyways, so you need to stop running around acting like you're dying!  You need to stop telling people your appendix ruptured and something's wrong with your colon, ain't nothing wrong with you, you're just constipated, you need to stop writing all that junk down acting like you're going to have an article in the reader's digest one day."  (*Id.* at PageID 238-39.)  Dr. Fowler examined Dowell and told him he had a hemorrhoid.  (*Id.* at PageID 239.)

Dowell saw Dr. Fowler again on March 19, 2021, and April 9, 2021, and advised Dr. Fowler that Dowell's bowel movements had not improved. (*Id.*) Dr. Fowler told Dowell to increase his fiber intake, drink plenty of water, and that Dowell would be receiving Miralax. (*Id.*)

On June 18, 2021, Dowell saw Dr. Fowler because Dowell's urine had a "yellowish" discharge, and Dowell was given an antibiotic (*Id.* at 240.) On August 23, 2021, Dowell was seen by Dr. Fowler for "tight knotty feelings in his stomach" after he ate. (*Id.*) Dowell does not state what treatment he received from Dr. Fowler on the August 23, 2021 visit, but later Dowell alleges he was prescribed lactulose and that he requested a different laxative. (*Id.* at PageID 241.) On August 25, 2021, Dowell sent a two-way message to Leslie Jones and Dr. Fowler about the lactulose prescription, saying that it made him vomit. (*Id.*) Leslie Jones responded that Dowell would receive a colonoscopy. (*Id.*)

Dowell alleges Dr. Fowler disregarded Dowell's follow-up treatment plan despite Dowell's ongoing complications. (*Id.* at PageID 243.) Dowell alleges Dr. Fowler's "failure to acknowledge" Dowell's continuing abdominal pain and constipation after Dowell's return from the hospital and Dr. Fowler's delay and denial of Dowell's treatment plan for a "surgical appendectomy and fiber diet" caused Dowell to suffer complications and a megacolon. (*Id.*) Dowell alleges Dr. Fowler's conduct amounts to "deliberate indifference" to Dowell's "serious medical needs[.] (*Id.*)

"[E]rrors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 568 (6th Cir. 2020) (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018)). "[A] plaintiff must show that the defendant consciously exposed him 'to an excessive risk of serious harm in administering treatment,' or 'rendered medical care so woefully inadequate as to amount to no treatment at all.'"

*Medina-Rodriguez v. Crompton*, No. 23-1172, 2023 U.S. App. LEXIS 16970, at *5-6 (6th Cir.

July 5, 2023) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446-47 (6th Cir. 2014)).

Dowell has adequately alleged facts on which a jury could plausibly infer that Dowell had

a serious need for medical care.  *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir.

2004) (finding a detainee who complained orally and in writing for over two days before receiving

medical treatment for appendicitis had adequately pled facts for a jury to reasonably find that

detainee had a serious need for medical care).  Dowell has satisfied the objective component of his

deliberate indifference claim.

Dowell has adequately alleged facts from which it can be plausibly inferred that Dr. Fowler

perceived and disregarded a substantial risk to Dowell when Dr. Fowler denied and delayed

Dowell's medical care.  Dowell has satisfied the Eighth Amendment's subjective

component.  (ECF. No 14 at PageID 234-35, 238-41, 243.)  *See Duncan v. Duckworth*, 644 F.2d

653 (7th Cir. 1981) (initial failure to diagnose prisoner's injury properly may be attributable to no

more than error in judgment, which may or may not be actionable as negligence, but failure to

promptly schedule surgery, once need for it was recognized and in face of prisoner's repeated

complaint of severe pain, raised questions about prison hospital officials' concern for their patient);

s*ee e.g., Brookes v. Shank*, 660 Fed. Appx. 465, 468 (6th Cir. 2016) (finding doctor subjectively

perceived facts from which he could infer a substantial risk to the plaintiff where he knew that the

plaintiff had been diagnosed with peripheral neuropathy).

Dowell's allegations in the Second Amended Complaint are sufficient to meet the threshold

inquiry at screening to state a claim for denial or delay of medical care against Dr. Fowler.

Dowell's claim for denial and delay of medical care SHALL PROCEED against Dr. Fowler in his

individual capacity.

### 4. **Leslie Jones**

On November 27, 2020, Dowell sent an inmate inquiry to Leslie Jones explaining that Dowell had been prescribed an antibiotic and needed to continue receiving antibiotics after Dowell had been told by a nurse that he would not be receiving additional antibiotics. (ECF No. 14 at PageID 235; *see* ECF No. 14-1 at PageID 249.) On November 30, 2020, Leslie Jones responded that Dowell's antibiotic had been ordered and would be received on December 1, 2020. (*Id.*)

On December 7, 2020, Leslie Jones responded to another grievance from Dowell about inadequate medical care, his deteriorating health, and his failure to receive antibiotics. (ECF No. 14 at PageID 236; ECF No. 14-1 at PageID 258.) Jones thanked Dowell for bringing the matter to Jones's attention and said that "appropriate action will be taken." (*Id.*)

On December 15, 2020, Dowell sent an inmate information request to Leslie Jones notifying her that Dowell only had two more days of antibiotics and asking if Dowell would receive a refill or have surgery. (ECF No. 14 at PageID 236.) Dowell alleges he never received a response from Leslie Jones. (*Id.*)

On April 23, 2021, Dowell filed an inmate grievance about his medical condition and the delay in his treatment. (ECF No. 14 at PageID 239, *see* ECF No. 14-1 at PageID 270-71.) On May 3, 2021, Leslie Jones responded to the inmate grievance, saying "you must address your concerns with your provider. The provider will see you on 5/5/21." (ECF No. 14-1 at PageID 273.)

On August 25, 2021, Dowell sent a two-way message to Leslie Jones and Dr. Fowler that the prescription lactulose made him vomit and requesting a different laxative. (ECF No. 14 at PageID 241; *see* ECF No. 14-1 at PageID 277.) Leslie Jones responded that Dowell would receive a colonoscopy on October 6, 2021. (ECF Nos. 14 & 14-1 at PageID 241, 278.)

Dowell alleges Leslie Jones "abandoned her role as Health Administrator" when she failed to make certain Dowell's treatment plan for antibiotics and surgery was followed. Dowell informed Leslie Jones that his health was deteriorating after Dowell's "follow-up treatment was interrupted through acts of delay and denial while he was experiencing ongoing abdomen pains and gastrointestinal complications." (ECF No. 14 at PageID 243.) Dowell alleges Leslie Jones "abandoned her role" by failing to take corrective action when Dowell was continually given lactulose that made him sick. (*Id.*) Dowell alleges that Leslie Jones's actions caused Dowell to suffer a megacolon in violation of Dowell's Eighth Amendment rights. (*Id.*)

As stated *supra*, Dowell's alleged medical condition satisfies the objective component of an Eighth Amendment claim based on a serious medical need.

Where a defendant "is charged with abandoning the specific duties of his position-responding to inmates' complaints about medical needs-in the face of actual knowledge of a breakdown in the proper workings of the department[,]" the defendant can be liable for deliberate indifference because he "*personally* had a job to do[.]" *See Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir.1992) (italics in original); *Darrah v. Krisher*, 865 F.3d 361, 371 (6th Cir. 2017). Leslie Jones's alleged action and inaction in her role as Health Administrator at NWCX can reasonably be inferred to satisfy the subjective component of the Eighth Amendment and amount to deliberate indifference.

Dowell's allegations in the Second Amended Complaint are sufficient to meet the threshold inquiry at screening to state a claim for denial or delay of medical care against Leslie Jones. Dowell's claim for denial and delay of medical care SHALL PROCEED against Leslie Jones in her individual capacity.

### 5. **Roney**

On February 28, 2021, Dowell was seen by Nurse Roney because Dowell had been suffering worsening "abdomen pain all day." (ECF No. 14 at PageID 237.) Roney gave Dowell a cup of water and a cup of lactulose and told Dowell to drink them. (*Id.*) Dowell told Roney that lactulose had caused him to vomit in the past. (*Id.*) Roney told Dowell "[g]o ahead and drink it in front of me and stay near the toilet when you get back to your cell, you're just constipated, they will call for you to come up here tomorrow." (*Id.*) Dowell alleges Roney was deliberately indifferent to Dowell's serious medical needs when she failed to provide "adequate medical care" by failing to check Dowell's "vitals", insisting Dowell take lactulose after Dowell told her he was "allergic to it", and intentionally delaying Dowell's medical treatment, causing him to suffer unnecessary pain. (*Id.* at PageID 244.)

Dowell's allegations against Roney amount to a disagreement about treatment. Roney did not deny Dowell treatment. Dowell has not alleged facts sufficient to establish the subjective component of a deliberate indifference claim based on Roney's actions. Dowell's claim for denial or delay of medical care against Roney is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### B. **TDOC Defendants**

### **Williams and Boyd**

Dowell alleges he mailed letters to TDOC Health Directors Williams and Boyd telling them about his medical treatment at NWCX and seeking their assistance. (ECF No. 14 at PageID 236, *see* ECF No. 14-1 at PageID 262-265.) Dowell alleges Boyd and Williams's failure to act on Dowell's letters about his delay and denial of medical treatment for his serious medical condition constitutes deliberate indifference. (ECF No. 14 at PageID 244.) Dowell does not allege facts

demonstrating Williams or Boyd's participation in the events on which Dowell's § 1983 claims are based.  (*See* ECF No. 14.)

When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Because Dowell fails to identify any actions Williams and Boyd took that violated Dowell's rights, he does not state a claim against Williams or Boyd in their individual capacities.  Dowell has failed to allege sufficient facts to state a claim of deliberate indifference to his serious medical needs against Williams and Boyd.  Those claims are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### C.  **NWCX Defendants**

#### 1.  **Steve Jones**

On November 30, 2020, Dowell woke with pain in his lower abdomen, was seen at the prison clinic, and was given Tylenol and Lactulose.  (ECF No. 14 at PageID 235.)  Dowell spoke to Steve Jones and told Jones that Dowell was not receiving his prescribed antibiotics.  (*Id.*)  S. Jones told Dowell that Jones would "contact the clinic and have them see [Dowell]."  (*Id.*)  On March 17, 2021, Dowell sent a two-way message to Steve Jones asking about Dowell's medical condition.  (*Id.* at PageID 239, *see* ECF No. 14-1 at PageID 266.)  On March 23, 2021, Steve Jones responded to Dowell's two-way message saying that, if Dowell were experiencing medical problems, Dowell should "put in a request for sick call to be evaluated."  (*See* ECF No. 14-1 at PageID 266.)  On September 13, 2021, Dowell wrote Steve Jones asking Jones to "look into" the two-way message Dowell had sent to Leslie Jones and Dr. Fowler requesting a different laxative. (ECF Nos. 14 & 14-1 at PageID 241, 278.)  Dowell alleges Steve Jones's failure to act on Dowell's

26

grievances and two-way message requests about the delay and denial of Dowell's medical treatment amounts to "deliberate indifference to [Dowell's] serious medical condition" constituting a violation of Dowell's Eighth Amendment rights.  (ECF No. 14 at PageID 243-244.)

To the extent Dowell claims that Steve Jones's failure to act on Dowell's grievances is a violation of Dowell's Constitutional rights, that claim fails.  Prisoners have a First Amendment right to file a grievance against prison officials, but they have no right to an investigation of their allegations.  *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed to investigate his grievances properly because there is no "federally protected liberty interest" in a certain resolution or investigation of grievances).

The failure to respond to repeated unconstitutional conduct by subordinates is relevant in determining whether supervisors implicitly authorized, approved or acquiesced in their subordinates' conduct. *See Weaver v. Tipton Cnty., Tenn.*, 41 F. Supp. 2d 779, 787 (W.D. Tenn. 1999) (citing *Leach v. Shelby Cty. Sheriff,* 891 F.2d 1241, 1246 (6th Cir. 1989)).   Even if supervisors are '"sloppy, reckless, or neglectful in the performance of their duties,' that is not enough for 42 U.S.C. § 1983 liability." *Id.* (quoting *Doe v. Claiborne County*, 103 F.3d 495, 513 (6th Cir. 1996)).

Dowell does not allege any active unconstitutional behavior by Steve Jones.  To the extent Dowell seeks to claim Jones failed to supervise, control, or train a subordinate, Dowell's claim fails.   To allege that a supervisory official failed to supervise, control, or train a subordinate, a plaintiff must allege specifically that the official "'implicitly authorized, approved or knowingly

27

acquiesced in the unconstitutional conduct' alleged." *Partin v. Parris*, No. 17-6172, 2018 U.S. App. LEXIS 7033, at *3-4 (6th Cir. Mar. 20, 2018) (quoting *Leach*, 891 F.2d at 1246).

Dowell's allegations against Steve Jones are insufficient to satisfy an Eighth Amendment claim of deliberate indifference. Dowell's claim for denial and delay of medical care against Steve Jones is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### 2. **Sanford**

On December 24, 2020, Dowell received a pass to be seen by mental health, but was told that Sanford said Dowell could not go to mental health because there were not any "callouts due to it being Christmas Eve." (ECF No. 14 at PageID 236.) Dowell alleges Sanford's refusal to allow Dowell to see medical for mental health treatment when Dowell had a medical pass amounts to deliberate indifference. (*Id.* at PageID 244.)

A prison official cannot be found liable under the Eighth Amendment unless that official subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Dowell's allegations are insufficient to support an inference that Sanford knew of and disregarded an excessive risk of harm to Dowell. Dowell's allegations do not satisfy the objective component of a serious medical need based on Dowell's mental health treatment or the subjective intent component of an Eighth Amendment claim of deliberate indifference. Dowell's claim for denial and delay of medical care against Sanford is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### 3. **Jackson**

On February 28, 2021, Roney saw Dowell for abdominal pain, and Dowell returned to his cell. Dowell asked another inmate to tell Sexton that Dowell needed to go back to medical because Dowell was not getting better. (ECF No. 14 at PageID 237.) Sexton came to Dowell's cell and told Dowell that the clinic advised Dowell would need to fill out a sick call to be seen the next day. (*Id.*) Dowell alleges his condition continued to worsen and he asked Unit Officers Sexton and Stennet if they could ask the clinic to check Dowell's vitals (*Id.*)

A few minutes later, Sergeant Jackson and Officer Baggett entered Dowell's unit. (*Id.*) Dowell alleges Jackson told Dowell "to go back to his cell because he was not going back to the clinic." (*Id.*) Dowell told Jackson that Dowell could "hardly walk and his stomach pain was getting more (sic) worse[.]" (*Id.*) Dowell alleges he attempted to tell Jackson his medical history and Jackson told Dowell that Nurse Roney had already seen Dowell and there was nothing else Roney could do for Dowell. (*Id.*) Jackson told Dowell that, if he did not go back to his cell, Dowell would be carried "to the hole (segregation)." (*Id.*) Jackson told other inmates to carry Dowell to his cell or Dowell would be carried to the hole. (*Id.*) Two inmates picked Dowell up and attempted to carry him to his cell. (*Id.* at PageID 238.) After the inmates dropped Dowell, they picked him up and placed him on a table. (*Id.*) Dowell then fell onto the floor. (*Id.*) Shortly after Dowell's fall, Nurse Andis began treating Dowell, and Nurse Andis eventually had Dowell transported to WTNH. (*Id.*) Dowell alleges Jackson's actions telling Dowell to return to Dowell's cell or that Dowell would be taken to segregation, refusing to allow Dowell to go to medical when Dowell was in pain and seeking medical attention, and telling other inmates to carry Dowell to Dowell's cell amount to deliberate indifference to Dowell's medical needs. (*Id.* at PageID 244-245.)

Dowell does not allege that Jackson knew about Dowell's medical condition. Jackson did not prevent Andis from providing medical care to Dowell. As explained, Dowell's allegations are insufficient to infer that Jackson knew of and disregarded an excessive risk of harm to Dowell.

Dowell's allegations about Jackson are insufficient to infer the intent required by the subjective component of an Eighth Amendment claim of deliberate indifference. Dowell's claim for denial and delay of medical care against Jackson is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

## IV. <u>AMENDMENT UNDER THE PLRA</u>

The Court DENIES leave to amend the Second Amended Complaint's (ECF No. 14) claims that are dismissed with prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1). The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, et seq. (the "PLRA"). *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua

sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts"). Dowell has amended his claims previously in this cause. The Court DENIES leave to amend again.

## V. <u>CONCLUSION</u>

For the reasons explained above:

A.    The claims in the Second Amended Complaint (ECF No. 14) for denial and delay of medical care against Mathis, Rinker, Roney, Williams, Boyd, Steve Jones, Sanford and Jackson in their individual capacities are DISMISSED WITH PREJUDICE for failure to state a claim to relief. *See* § 1915(e)(2)(B)(ii) and 1915A(b)(1);

B.    The Second Amended Complaint (ECF No. 14) shall PROCEED on Dowell's delay and denial of medical care claims against Dr. Fowler and Leslie Jones in their individual capacities (the "Remaining Defendants");

C.    Leave to amend the claims DISMISSED WITH PREJUDICE IS DENIED;

D.    The Clerk is ORDERED to issue process for the Remaining Defendants and to deliver that process to the U.S. Marshal for service. Service shall be made on the Remaining Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) & (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States;

E.    It is further ORDERED that Dowell shall serve a copy of every subsequent document he files in this case on the attorneys for the Remaining Defendants or on any Remaining Defendant personally if that Defendant is unrepresented. Dowell

shall make a certificate of service on every document he files.  Dowell shall

familiarize himself with the Federal Rules of Civil Procedure and this Court's Local

Rules;[8] and

F.      Dowell is reminded that he must promptly notify the Clerk, in writing, of any

change of address or extended absence.  Failure to comply with these requirements,

or any other order of the Court, may result in the dismissal of this case without

further notice.

IT IS SO ORDERED, this  _26th_  day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[8] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at
https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf