IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KELVIN DOWELL,

    Plaintiff,

v.                                                      No. 1:22-cv-01009-JDB-jay

NURSE DAVID KENT MATHIS, et al.,

    Defendants.

ORDER GRANTING DEFENDANT LESLIE JONES'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

Before the Court is the motion of the Defendant, Leslie Jones ("Jones"), to dismiss the Second Amended Complaint of the Plaintiff, Kelvin Dowell ("Plaintiff" or "Dowell"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Docket Entry ("D.E.") 29), to which Plaintiff responded (D.E. 36) and Jones replied. (D.E. 37.) For the reasons articulated herein, the motion is GRANTED.

I.     FACTS ALLEGED

The facts alleged in the Second Amended Complaint, (D.E. 14), taken as true for purposes of the instant motion, are as follows. On November 12, 2020, Plaintiff, incarcerated at Northwest Correctional Complex ("NCC"), experienced exhaustion and vomiting, prompting him to fill out an institutional sick call request to receive medical care for constipation pain. (D.E. 14 at PageID 232.) After not receiving care, Plaintiff initiated an emergency sick call procedure on November 13 and medical personnel gave him a laxative for his condition. (*Id.*) Plaintiff's pain worsened, and on November 17, medical personnel obtained a blood and urine sample and gave Plaintiff

lactulose and Tylenol.  (*Id.* at PageID 232-33.)  When Dowell reported even more severe pain, he was X-rayed on November 18 and could not walk without assistance for several days thereafter. (*Id.*)  The next day, medical personnel determined that Plaintiff's temperature was 101 degrees, gave him a shot, and transported him from the prison to West Tennessee Healthcare in Dyersburg, Tennessee.  (*Id.* at PageID 233-34.)  There, an examining nurse determined that Dowell had a ruptured appendix where an abscess had formed, causing an infection to build.  (*Id.* at PageID 234.)

Plaintiff was next transported to Regional One Medical in Memphis, Tennessee, where he was given antibiotics.  (*Id.*)  He was taken to surgery but was informed that, due to the infection build up, he could not undergo an operation.  (*Id.*)  Subsequently, he remained on IV antibiotics for five days, and upon taking four to six more weeks of antibiotics, Plaintiff was advised he could be operated on to remove the infection and his appendix.  (*Id.*)  Dowell returned to NCC on November 24, where he was informed that he would be receiving a substitute antibiotic as the one prescribed was out of stock.  (*Id.*)  The next day, Defendant, Dr. Mark Fowler, saw Plaintiff and advised him he had probably received sufficient antibiotics by IV while at the hospital.  (*Id.*)

On November 27, a nurse alerted Plaintiff he would not be receiving any more antibiotics. (*Id.*)  The inmate then filed an information request form, explaining his health condition to Defendant, Health Administrator Leslie Jones.  (*Id.* at PageID 235.)  Jones responded that Plaintiff's antibiotic would not arrive until December 1 due to the Thanksgiving holiday. (*Id.*)  On November 30, Dowell again experienced lower abdominal pain, and upon his visit to the clinic, received Tylenol and lactulose.  (*Id.*)  The nurse told him to return to the medical window on the next day and his antibiotics should be there.  (*Id.*)  On December 1, a nurse informed Plaintiff that Dr. Fowler "messed up on your prescription," so the antibiotic would not arrive until December 3.

(*Id.*) On December 2, Plaintiff again sought medical care for pain in his groin area, and Dr. Fowler gave him Colace stool softeners. (*Id.*) When Dowell asked Fowler about his antibiotic prescription, the doctor repeated his answer from his November 25 visit with Plaintiff: he had probably received sufficient antibiotics by IV while at the hospital. (*Id.*)

On December 2, Plaintiff filed a grievance that detailed his pain and delayed medical care, both before and after his visit to Regional One Medical. (*Id.* at PageID 235-36.) The next day, Jones responded to Plaintiff's complaint that "[a]ppropriate action will be taken." (*Id.* at PageID 236.) Dowell then received two trays, consisting of thirty antibiotics and thirty Colace stool softeners. (*Id.*)

On December 15, Plaintiff sent a request form to Jones, informing her that he only had two days of antibiotics left and asking if he could receive a refill or surgery. (*Id.*) The inmate never received a response. (*Id.*) On December 23, Dowell signed up for sick call to see mental health personnel, due to his worry about his unsettled treatment, anxiety, depression, and feelings of helplessness. (*Id.*) The next day, Plaintiff received a pass to be seen by mental health personnel. (*Id.*) When he attempted to use his pass for that purpose, prison staff informed Plaintiff that he could not go due to the Christmas holiday's limitation on callouts. (*Id.*)

On January 20, 2021, the inmate signed up to see mental health personnel because he noticed mucus in his stool and worsening constipation, but he did not receive a pass. (*Id.*) On January 26 and January 29, Plaintiff visited sick call for ongoing abdominal pain and constipation complications. (*Id.* at PageID 237.) On February 5, a nurse told Plaintiff that she would prescribe him something for his ongoing constipation, but she did not know how soon he would receive it. (*Id.*)

3

On February 28, as Dowell experienced increased abdominal pain, he went to the clinic, where a nurse instructed him to take lactulose in spite of Plaintiff's explanation that lactulose had made him vomit. (*Id.*) An hour after he returned to his cell, the inmate felt no pain relief, so he asked a unit officer to call the clinic to check his vitals. (*Id.*) A sergeant told Plaintiff to return to his cell because he could not go back to the clinic, despite Dowell's description that he could hardly walk due to his stomach pain. (*Id.*) The inmate began to detail his medical history, and the sergeant told him to go back to his cell or he would be taken to "the hole," a segregated cell. (*Id.*) Two inmates carried Plaintiff up to his cell and stopped at a table, where Plaintiff fell onto the floor. (*Id.* at PageID 238.) A nurse came with a wheelchair and took Dowell to the clinic, and after not hearing any bowel sounds when checking for vitals, she gave him an enema and placed in a cell for observation. (*Id.*) When she observed Plaintiff emitting mucus while attempting to have a bowel movement, she sent him to West Tennessee Healthcare. (*Id.*) There, Dr. Steven Hall asked the inmate about his prior visit to the hospital, and when the physician learned that the surgery had not been performed, he observed that it was risky not to have the operation. (*Id.*) Plaintiff received a CT scan, which revealed intestinal problems, namely megacolon. (*Id.*)

On March 7, Plaintiff signed up for sick call due to bloody stool, and a nurse told him that he was on the list to see a doctor on March 12. (*Id.*) On March 12, Plaintiff was unable to see a doctor because the nurses left for a funeral, so his appointment was canceled. (*Id.*) Dowell's supervisor at his institutional job let him return to his cell because he was not feeling well. (*Id.*) When Plaintiff returned to his unit, an officer directed him to the clinic, where Dr. Fowler told him to "stop filing all these grievances, requests and complaints" because "there's really nothing wrong with you, nothing life threatening anyways." (*Id.* at Page ID 238-39.) Defendant then examined the inmate and informed him that he had a hemorrhoid. (*Id.* at PageID 239.)

4

On March 19, Plaintiff saw Dr. Fowler and explained that his bowel movements were not any better. (*Id.*) The physician instructed Plaintiff to increase his fiber intake. (*Id.*) When the inmate asked about receiving a fiber diet, Dr. Fowler told him, "Just drink plenty of water." (*Id.*) On April 9, Dowell saw Dr. Fowler again with the same complaints of pain and discomfort, and the doctor informed Plaintiff that he would receive Miralax. (*Id.*) On April 22, the nurse at the medical window informed the inmate that the prison does not receive Miralax. (*Id.*) On April 23, Plaintiff filed a grievance about how his condition had not been properly addressed. (*Id.*) Jones responded to the grievance by referring Plaintiff and his concerns to Dr. Fowler. (*Id.*)

On May 30 and June 1, Plaintiff signed up for sick call due to painful and bloody attempts to use the restroom, but he did not receive a pass. (*Id.*) On June 16, Plaintiff experienced cold chills, lightheadedness, and vomiting, so he asked a unit officer for an emergency visit to the clinic. (*Id.* at PageID 240.) When Plaintiff was told that he would have to wait until the next day for sick call, he filed an emergency grievance. (*Id.*) A nurse visited his cell at around 11:30 PM, and she tested him for Covid and the flu and gave him Tylenol. (*Id.*) On June 18, Plaintiff urinated a yellowish white liquid, and at his visit with Fowler, he provided the physician with a urine sample. (*Id.*) Because Fowler believed the inmate had a medical issue, Dowell received a shot and antibiotics. (*Id.*)

On August 12, Plaintiff spoke with a gastrointestinal specialist, who recommended a high fiber diet and a colonoscopy. (*Id.*) On August 23, Plaintiff saw Dr. Fowler again and reported tight knotty feelings in his stomach whenever he ate. (*Id.*) On August 25, Plaintiff sent a two-way message form to Jones and Dr. Fowler, in which he informed them that he was prescribed lactulose again, explained how lactulose made him vomit, and asked if he could receive another laxative. (*Id.* at PageID 241.) After several weeks of no response, Jones responded that Plaintiff would

5

receive a colonoscopy on October 6. (*Id.*) On September 27, Plaintiff was transferred to Tennessee Department of Corrections Deberry Special Needs Facility. (*Id.*) On October 7, he was taken to Nashville General Hospital, where he received a colonoscopy, which revealed intestinal and hemorrhoid problems. (*Id.*)

On January 13, 2022, Plaintiff filed a pro se complaint that alleged a violation of civil rights under § 1983. (D.E. 1.) After the inmate filed an amended complaint on July 25, 2025, (D.E. 12), it was dismissed without prejudice. (D.E. 13.) Plaintiff then filed a second amended complaint, which is the operative pleading discussed here. The Court later dismissed part of the second amended complaint with prejudice, resulting in Jones and Dr. Fowler as the only two remaining defendants. (D.E. 15.)

With respect to Jones, Plaintiff alleged that, while acting under color of state law in her individual capacity, she "abandoned her role as Health Administrator in ensuring [the adherence to] Plaintiff's follow-up treatment for antibiotics/surgery," after Plaintiff complained of deteriorating health when his follow-up treatment had been interrupted "through acts of delay and denial." (D.E. 14 at PageID 243.) Dowell also alleged that Jones "abandoned her role" by her failure to correct Plaintiff's prescription to exclude lactulose, a laxative that caused him to vomit. (*Id.*) He further contended that Jones's actions, as health administrator, contributed to the infliction of "deliberate indifference . . . upon [P]laintiff's serious medical needs[,] for the failure to adhere to recommended treatment led to [P]laintiff suffering megacolon." (*Id.*) Plaintiff stated that this deliberate indifference caused a violation of his Eighth Amendment rights, (*id.*), and that he is entitled to $100,000 in compensatory damages for his physical, mental, and emotional injuries; $100,000 in punitive damages for physical, mental, and emotional injuries; and any other available relief that the Court deems necessary. (*Id.* at PageID 245-46.)

6

II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The district court's task when presented with a Rule 12(b)(6) motion, which permits dismissal for "failure to state a claim upon which relief can be granted," is a limited one—requiring it to determine "whether the claimant is entitled to offer evidence to support [its] claims," not to decide "whether a plaintiff will ultimately prevail." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In completing its task, the court is to "view the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and look to see whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1079 (6th Cir. 2022) (internal quotation marks and citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A Rule 12(b)(6) movant "has the burden of proving that no claim exists." *Tenn. Valley Auth. v. Fire Star Energy Res., LLC*, 749 F. Supp. 3d 918, 921 (E.D. Tenn. 2024) (quoting *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008)). This burden is one of "explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Id.* (quoting *Metro Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024)). "A complaint should only be dismissed if it is clear to the court that no relief could be

granted under any set of facts that could be proved consistent with the allegations." *Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)) (internal quotation marks omitted).

Generally, matters outside the pleadings are not to be considered on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment pursuant to Federal Rule of Civil Procedure 56. *Edwards v. Tenn. Valley Fed. Credit Union*, No. 1:23-cv-233, 2024 WL 2981180, at *3 (E.D. Tenn. June 13, 2024) (quoting *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018). However, a district court may consider "exhibits attached to the complaint . . . [if] they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

Lastly, pro se complaints are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

III.   ARGUMENTS OF THE PARTIES AND ANALYSIS

Count I – § 1983 Claim Based on Deliberate Indifference Under the Eighth Amendment

a.   § 1983 Claim

42 U.S.C. § 1983 provides that "[e]very person who, under color or any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights under the Constitution or federal law, and (2) that the

8

deprivation was caused by a person acting under color of state law. *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023).

Plaintiff contends that Jones acted under color of state law when she deprived him of his rights under the Eighth Amendment of the Constitution. (D.E. 14 at PageID 243.) Defendant maintains that Plaintiff has failed to plead sufficient facts to establish her deprivation of Plaintiff's rights under the Eighth Amendment. (D.E. 30 at PageID 412.) Jones does not contest that she acted under color of state law.

        b.      Eighth Amendment

The Eighth Amendment "protects all people from 'cruel and unusual punishments.'" *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting U.S. Const. amend. VIII.). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference to a prisoner's need for medical attention "suffices for a claim under 42 U.S.C. § 1983." *Id.* (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). This indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

9

The Eighth Amendment deliberate indifference framework requires both an objective and subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the objective aspect, the prisoner must have a "sufficiently serious" medical need. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also id.* (requiring the prisoner to show "that he is incarcerated under conditions posing a substantial risk of serious harm").

Under the subjective point, the prisoner must demonstrate that prison officials have "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This state of mind is satisfied when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. An inmate must "show that the individual defendant[] (1) [was] 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) actually drew the inference; and (3) consciously disregarded the risk." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726-27 (6th Cir. 2022) (quoting *Farmer*, 511 U.S. at 837). On one hand, an official may be liable if he "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. On the other, an official "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Courts examine "the prison authorities' current attitudes and conduct" in their determination of the subjective prong. *Helling*, 509 U.S. at 36.

Jones does not contest that Plaintiff has satisfied the objective prong, so the Court will only address the subjective aspect.

In considering whether Plaintiff satisfied the subjective prong, the Court will examine the five instances when Plaintiff interacted with Defendant for the purpose of medical care, forming the basis for the instant claim.

                i.        Response to Request Form on November 27, 2020

Dowell's first interaction with Jones detailed in the Second Amended Complaint occurred on November 27, 2020, after Plaintiff had returned to prison from his first hospital visit. (D.E. 14 at PageID 235.) Upon learning from a nurse that he would not receive any more antibiotics, Plaintiff filed an information request form with Jones that explained his ongoing health condition. (*Id.* at PageID 234-35.) In response, she informed Plaintiff that his antibiotic would arrive on December 1. (*Id.* at PageID 235.) On that date, Plaintiff learned that his prescription would not arrive until December 3 because of Dr. Fowler's mishandling of the prescription. (*Id.*)

In this interaction, Plaintiff cannot successfully establish the subjective prong of his deliberate indifference claim. Jones timely responded to Plaintiff's request form. She may have "know[n] of . . . an excessive risk to inmate health," but her response demonstrates that she did not "disregard[]" this risk. *Farmer*, 511 U.S. at 837. Thus, this episode does not demonstrate deliberate indifference.

                ii.       Response to Grievance on December 3, 2020

Second, Plaintiff lodged a complaint about his pain on December 2, 2020, and Jones responded on December 3, by stating, "Thank you for bringing this to my attention. Appropriate action will be taken." (D.E. 14 at PageID 235-36.) Later on the same day, Dowell received thirty antibiotics and thirty Colace stool softeners. (*Id.* at 236.)

He contends her response "was not proactive," (D.E. 36 at PageID 450), but the Court disagrees. In this interaction, Jones did not "consciously disregard[] the risk" of harm. *Westmoreland*, 29 F.4th at 726-27. In fact, she provided medical care to Plaintiff in direct response to his grievance. The second event is plainly not deliberate indifference.

                iii.      Failure to Respond to December 15, 2020, Request Form

11

Third, following Jones's response to Dowell's grievance on December 3, Plaintiff again sent a request form to her on December 15, 2020. (D.E. 14 at PageID 236.) In this document, he claimed that he had only two days of antibiotics remaining and inquired if he would receive either a refill or undergo the surgery discussed during his visit to the hospital. (*Id.*) He claimed he never received a response to this request. (*Id.*) Plaintiff cites to *Dominguez v. Correctional Medical Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) in support of his argument that Jones's failure to respond creates an inference that she knew of a substantial risk from an obvious condition, his repeated appendix issues. (D.E. 36 at PageID 449-50.)[1]

The Health Administrator's failure to respond does not rise to the level of deliberate indifference because there is no allegation that she "consciously disregarded the risk" to Plaintiff's health by failing to respond. *Westmoreland*, 29 F.4th at 726-27. Considering Jones's "attitudes and conduct," *Helling*, 509 U.S. at 36, her dutiful responses to Plaintiff's request forms and grievances both before and after this lapse exhibit that she lacked the "sufficiently culpable state of mind" to satisfy the subjective prong. *Blackmore*, 390 F.3d at 895 (quoting *Brown*, 207 F.3d at 867). Her failure to respond, in light of her former and later action towards Plaintiff, suggests that her conduct may be negligent, but not indicative of deliberate indifference. *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Mitchell v. Hininger*, 553 F. App'x, 602, 604 (6th Cir. 2014) ("Deliberate indifference requires more than mere negligence, more than even medical malpractice. It requires something akin to criminal recklessness." (internal citations omitted)).

---

[1] In *Dominguez*, the incarcerated plaintiff became a quadriplegic after the defendant nurse repeatedly ignored signs and delayed care for heat exhaustion and dehydration. 555 F.3d at 546-48. The Sixth Circuit found that the registered nurse, due to her professional training, was aware or should have been aware of the dangers of heat-related illnesses and dehydration, so a circumstantial inference was created that the nurse may have acted deliberately indifferent. *Id.* at 550-51. As a result, the Sixth Circuit upheld the district court's denial of summary judgment as to this nurse.

Additionally, the Sixth Circuit has instructed that "denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (internal quotations and citations omitted). In addition, Jones's role as a health administrator, instead of a care provider such as a nurse or doctor, somewhat insulates her in the § 1983 context because she is not personally involved in Plaintiff's medical care. *See Hempstead v. Parker*, No. 3:21-CV-417-TAV-DCP, 2023 WL 4280679 at *10 (E.D. Tenn. June 29, 2023) (granting summary judgment to a health services administrator because she merely responded to the plaintiff's medical grievances and indicated appropriate treatment; she was not "personally involved in his medical care").

      iv.  Response to Grievance on May 3, 2021

Dowell's next referenced interaction with Jones occurred on April 23, 2021, when he filed a grievance about how his serious medical condition had not been properly addressed. (D.E. 14 at PageID 239.) On May 3, Jones acknowledged the grievance and referred Plaintiff's concerns to Dr. Fowler. (*Id.*) In the weeks prior to this complaint, Plaintiff had experienced recurrent issues with his treatment, including several visits with Dr. Fowler that did not resolve his issues. (*Id.* at 238-39.)

Dowell maintains that Jones, when she answered this grievance, was aware of his repeated, failed visits with Dr. Fowler. (D.E. 36 at PageID 451.) Thus, her decision to refer his complaints back to Dr. Fowler had the effect of "delaying and denying [his] treatment plan." (*Id.*) Jones counters that her referral to Dr. Fowler constituted an effort to assist the inmate in securing treatment, which was the most she could do in her limited role as a health administrator. (D.E. 30 at PageID 415.) Thus, Jones took affirmative action within her position to respond to Plaintiff's

grievance, and this effort contradicts the inmate's assertion that she was deliberately indifferent to his needs.

With respect to this specific interaction, Plaintiff seems to simply differ with Jones's decision. He received medical care from Dr. Fowler, but challenges the result of the referral. Sixth Circuit caselaw has long held that there is a distinction between a claim about the "complete denial of medical care" and one "that a prisoner received inadequate medical treatment." *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Selby v. Martin*, 84 F. App'x 496, 499 (6th Cir. 2003) ("[T]he record clearly reveals a competent and conscientious course of medical treatment [consisting of evaluation by a nurse and physician and instructions for daily care], and [the plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment."); *Hempstead*, 2023 WL 4280679 at *9 ("When . . . a prisoner has received some medical attention and the dispute concerns the adequacy of the treatment provided, a prisoner cannot establish deliberate indifference unless his treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005))). Plaintiff's disagreement with his referral to Dr. Fowler is not deliberate indifference on the part of Jones.

      v.  Response to Two-Way Message Form in September 2021

Dowell's fifth interaction with Jones arose on August 25, 2021, when Plaintiff sent a two-way message form to Jones and Dr. Fowler. (D.E. 14 at PageID 241.) In this message, Plaintiff advised that he had been prescribed lactulose again, explained how lactulose made him vomit, and

14

asked if he could receive another laxative. (*Id.*) In September, Jones responded that Plaintiff would receive a colonoscopy on October 6. (*Id.*) On October 7, Plaintiff underwent that procedure at Nashville General Hospital. (*Id.*)

Dowell avers that Jones "prolonged her response and only responded when Plaintiff sent [a] two-way message to Associate Warden [of Treatment Clinic Steve Jones]." (D.E. 36 at PageID 452.) Further, he alleges that the G.I. specialist he visited on August 12, 2021, was the one who recommended the colonoscopy, not Jones. (*Id.*) Plaintiff asserts this two-way message and her response as additional evidence that Jones was "aware of Plaintiff's ongoing medical abdominal problems." (*Id.*)

Plaintiff is correct that Jones was aware of Plaintiff's medical issues. However, her awareness does not establish deliberate indifference. Despite her delayed response, Jones once again acted within her role to facilitate medical aid to Plaintiff by coordinating his colonoscopy. Whether the G.I. specialist, Jones, or another person initiated the colonoscopy, she plainly did not "consciously disregard[] the risk" to the inmate's ongoing issues by informing him of a medical procedure that would likely, and eventually did, reveal the precise condition that Plaintiff suffered from. *Westmoreland*, 29 F.4th at 726-27. Thus, Dowell cannot establish that Jones acted with deliberate indifference in her response about Plaintiff's colonoscopy.

The inmate further claims that the colonoscopy, along with his other treatment, was "so cursory as to amount to no treatment at all[, which] may amount to deliberate indifference." (D.E. 36 at PageID 452 (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)).)[2] As discussed previously, Plaintiff received medical care from a variety of providers,

---

[2] As to Plaintiff's reliance on *Terrance*, this case is distinct from the one at hand. In *Terrance*, the decedent was an involuntarily committed mental patient who suffered from obesity, diabetes, hypertension, heart conditions, and was on psychotropic medications. 286 F.3d at 838-40. The decedent died after several mistakes and omissions in his medical treatment, including the delay of calling for emergency treatment when the decedent was staggering

15

and Jones helped to facilitate that treatment.  Although largely unsuccessful as evidenced by Plaintiff's persistent pain, Jones did not render "cursory" treatment.  Although she did not directly provide any medical services to Plaintiff, she acted within her role as health administrator to respond to the inmate's complaints and refer him to the medical personnel who could best help him.  Again, when a plaintiff receives medical care, disagreement with that course of care does not amount to deliberate indifference.  *See supra* Section III.b.iv.

…

The Court now considers Plaintiff's allegation against Jones in the Second Amended Complaint, that she "abandoned her role as Health Administrator." (D.E. 14 at PageID 243.)  In order to hold a defendant liable for abandoning his or her role, the claim must be made "in the face of actual knowledge of a breakdown in the proper workings of their respective departments or facilities, such that this failure resulted in a direct violation of the plaintiff's Eighth Amendment rights."  *Darrah v. Krisher*, 865 F.3d 361, 371 (6th Cir. 2017) (internal quotations and citations omitted).  Plaintiff has not presented any evidence of a breakdown in the proper workings of Jones's department, and certainly none that resulted in a direct violation of Plaintiff's Eighth Amendment rights by Jones.  Dowell has presented evidence that Jones responded to his request forms and grievances, which represented a fulfilment of her role, not an abandonment.  Therefore, Plaintiff cannot properly allege that she "abandoned her role as Health Administrator."

---

and showing signs of heat stroke, and when his prescribed medicine put him at high risk in this situation.  *Id.* at 840. The Sixth Circuit reversed the district court's granting of summary judgment as to an Eighth Amendment claim against four defendants (three doctors and one nurse) because a material issue of fact existed as to whether these medical professionals acted with deliberate indifference.  *Id.* at 844-46.  Applicable to Jones here, the Sixth Circuit in *Terrance* upheld the district court's granting of summary judgment to the psychiatric hospital's "medical director" who was responsible for drafting the hospital's policies because this role "[w]ithout more . . . is insufficient to subject him to individual liability under the facts of this case."  *Id.* at 846-47.

IV.     CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has not stated an Eighth Amendment deliberate indifference claim under § 1983 as to Jones.  Accordingly, Jones's motion to dismiss is GRANTED.

IT IS SO ORDERED this 6th day of January 2026.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE