IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KELVIN DOWELL,

      Plaintiff,

v.                                                             No. 1:22-cv-01009-JDB-jay

NURSE DAVID KENT MATHIS, et al.,

      Defendants.

---

ORDER GRANTING DEFENDANT DR. MARK FOWLER'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT AND DENYING AS MOOT
PLAINTIFF'S MOTION TO APPOINT COUNSEL

---

Before the Court is the motion of the Defendant, Dr. Mark Fowler ("Defendant" or "Dr. Fowler"), to dismiss the Second Amended Complaint of Plaintiff, Kelvin Dowell ("Plaintiff" or "Dowell"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Docket Entry ("D.E.") 38), to which Plaintiff responded, (D.E. 40), and Fowler replied. (D.E. 41.) For the reasons articulated herein, the motion is GRANTED. Also, the motion of Plaintiff to appoint counsel (D.E. 31) is DENIED AS MOOT.

I.       FACTS ALLEGED

The facts alleged in the Second Amended Complaint, (D.E. 14), taken as true for purposes of the instant motion, are as follows. On November 12, 2020, Plaintiff, incarcerated at Northwest Correctional Complex ("NCC"), experienced exhaustion and vomiting, prompting him to fill out an institutional sick call request to receive medical care for constipation pain. (D.E. 14 at PageID 232.) After not receiving care, Plaintiff initiated an emergency sick call procedure on November 13 and medical personnel gave him a laxative for his condition. (*Id.*) Plaintiff's pain worsened,

and on November 17, medical personnel obtained a blood and urine sample and gave Plaintiff

lactulose and Tylenol. (*Id.* at PageID 232-33.) When Dowell reported even more severe pain, he

was X-rayed on November 18 and was unable to walk without assistance for several days

thereafter. (*Id.*) The next day, medical personnel determined that Plaintiff's temperature was 101

degrees, gave him a shot, and transported him from the prison to West Tennessee Healthcare in

Dyersburg, Tennessee. (*Id.* at PageID 233-34.) There, an examining nurse determined that Dowell

had a ruptured appendix where an abscess had formed, causing an infection to build. (*Id.* at PageID

234.)

Plaintiff was next transported to Regional One Medical in Memphis, Tennessee, where he

was given antibiotics. (*Id.*) He was taken to surgery but was informed that, due to the infection

build up, he could not undergo an operation. (*Id.*) He remained on IV antibiotics for five days

and after taking four to six more weeks of antibiotics, Plaintiff was advised he could be operated

on to remove the infection and his appendix. (*Id.*) Dowell returned to NCC on November 24,

where he was informed that he would be receiving a substitute antibiotic as the one prescribed was

out of stock. (*Id.*) The next day, Defendant saw Plaintiff and advised him he had probably received

sufficient antibiotics while at the hospital. (*Id.*)

On November 27, a nurse alerted Plaintiff he would not be receiving any more antibiotics.

(*Id.*) The inmate then filed an information request form, explaining his health condition to

Defendant, Health Administrator Leslie Jones. (*Id.* at PageID 235.) Jones responded that

Plaintiff's antibiotic would not arrive until December 1 due to the Thanksgiving holiday. (*Id.*) On

November 30, Dowell again experienced lower abdominal pain, and upon his visit to the clinic,

received Tylenol and lactulose. (*Id.*) The nurse told him to return to the medical window on the

next day and his antibiotics should be available. (*Id.*) On December 1, a nurse informed Plaintiff

that Dr. Fowler "messed up on your prescription," so the antibiotic would not arrive until December 3. (*Id.*) On December 2, Plaintiff again sought medical care for pain in his groin area, and Defendant gave him Colace stool softeners. (*Id.*) When Plaintiff asked Fowler about his antibiotic prescription, the doctor reiterated his response from his November 25 visit with Plaintiff: that he had probably received sufficient antibiotics by IV while at the hospital. (*Id.*)

On December 2, Plaintiff filed a grievance that detailed his pain and delayed medical care, both before and after his visit to Regional One Medical. (*Id.* at PageID 235-36). The next day, Jones responded to Plaintiff's complaint that "[a]ppropriate action will be taken." (*Id.* at PageID 236.) Dowell then received two trays, consisting of thirty antibiotics and thirty Colace stool softeners. (*Id.*)

On December 15, Dowell sent a request form to Jones, informing her that he only had two days of antibiotics left and asking if he could receive a refill or surgery. (*Id.*) The inmate never received a response. (*Id.*) On December 23, Plaintiff signed up for sick call to see mental health personnel, due to his worry about his unsettled treatment, anxiety, depression, and feelings of helplessness. (*Id.*) The next day, Plaintiff received a pass to be seen by mental health personnel. (*Id.*) When he attempted to use his pass for that purpose, prison staff informed Plaintiff that he could not go due to the Christmas holiday's limitation on callouts. (*Id.*)

On January 20, 2021, the inmate signed up to see mental health personnel because he noticed mucus in his stool and worsening constipation, but he did not receive a pass. (*Id.*) On January 26 and January 29, Plaintiff visited sick call for ongoing abdominal pain and constipation complications. (*Id.* at PageID 237.) On February 5, a nurse told Plaintiff that she would prescribe him something for his ongoing constipation but did not know how soon he would receive it. (*Id.*)

On February 28, as Dowell experienced increased abdominal pain, he went to the clinic, where a nurse instructed him to take lactulose in spite of Plaintiff's complaint that the medicine had made him vomit. (*Id.*) An hour after he returned to his cell, the inmate felt no relief, so he asked a unit officer to call the clinic to check his vitals. (*Id.*) A sergeant told Plaintiff to return to his cell because he could not go back to the clinic, despite Plaintiff's description that he could hardly walk due to his stomach pain. (*Id.*) As the inmate began to detail his medical history, the sergeant told him to return to his cell or he would be taken to "the hole," a segregated cell. (*Id.*) Two inmates carried Plaintiff up to his cell and stopped at a table, where Plaintiff fell onto the floor. (*Id.* at PageID 238.) A nurse came with a wheelchair and took Dowell to the clinic, and after not hearing any bowel sounds when checking for vitals, she gave him an enema and placed in a cell for observation. (*Id.*) When she observed Plaintiff emitting mucus while attempting to have a bowel movement, she sent him to West Tennessee Healthcare. (*Id.*) There, Dr. Steven Hall asked the inmate about his prior visit to the hospital, and when the physician learned that the surgery had not been performed, he stated that it was risky to not have the operation. (*Id.*) Plaintiff received a CT scan, which revealed intestinal problems, namely megacolon. (*Id.*)

On March 7, Plaintiff signed up for sick call due to bloody stool, and a nurse advised him that he was on the list to see a doctor on March 12. (*Id.*) On March 12, Plaintiff was not able to see a doctor as his appointment was canceled due to the nurses leaving for a funeral. (*Id.*) Dowell's supervisor at his institutional job allowed him to return to his cell because he was not feeling well. (*Id.*) When Plaintiff got to his unit, an officer directed him to the clinic, where Dr. Fowler told him to "stop filing all these grievances, requests and complaints" because "there's really nothing wrong with you, nothing life threatening anyways." (*Id.* at Page ID 238-39.) Defendant then examined the inmate and informed him that he had a hemorrhoid. (*Id.* at PageID 239.)

On March 19, Plaintiff saw Defendant and explained that his bowel movements were not any better. (*Id.*) The physician instructed Plaintiff to increase his fiber intake. (*Id.*) When Plaintiff asked about receiving a fiber diet, Dr. Fowler told him, "Just drink plenty of water." (*Id.*) On April 9, Dowell saw Dr. Fowler again with the same complaints of pain and discomfort, and the doctor informed Plaintiff that he would receive Miralax. (*Id.*) On April 22, the nurse at the medical window informed the inmate that the prison does not receive Miralax. (*Id.*) The next day, Plaintiff filed a grievance about how his condition had not been properly addressed. (*Id.*) Jones responded to the grievance by referring Plaintiff and his concerns to Dr. Fowler. (*Id.*)

On May 30 and June 1, Dowell signed up for sick call due to painful and bloody attempts to use the restroom, but he did not receive a pass. (*Id.*) On June 16, Plaintiff experienced cold chills, lightheadedness, and vomiting, so he asked a unit officer for an emergency visit to the clinic. (*Id.* at PageID 240.) When Plaintiff was told that he would have to wait until the next day for sick call, he filed an emergency grievance. (*Id.*) A nurse visited his cell at around 11:30 PM, and she tested him for Covid and the flu and gave him Tylenol. (*Id.*) On June 18, Plaintiff urinated a yellowish white liquid, and at his visit with Fowler, he provided the physician with a urine sample. (*Id.*) Because Fowler believed the inmate had a medical issue, Dowell received a shot and antibiotics. (*Id.*)

On August 12, Plaintiff spoke with a gastrointestinal specialist, who recommended a high fiber diet and a colonoscopy. (*Id.*) On August 23, Plaintiff saw Dr. Fowler again and reported tight knotty feelings in his stomach whenever he ate. (*Id.*) Two days later, Plaintiff sent a two-way message form to Jones and Dr. Fowler, in which he informed them that he was prescribed lactulose again, explained how lactulose made him vomit, and asked if he could receive another laxative. (*Id.* at PageID 241.) After several weeks of no response, Jones responded that Dowell

would receive a colonoscopy on October 6.  (*Id.*)  On September 27, Plaintiff was transferred to Tennessee Department of Corrections Deberry Special Needs Facility.  (*Id.*)  On October 7, he was taken to Nashville General Hospital, where he underwent a colonoscopy, which revealed intestinal and hemorrhoid problems.  (*Id.*)

On January 13, 2022, Dowell filed a pro se complaint, alleging a violation of civil rights under § 1983.  (D.E. 1.)  After the inmate filed an amended complaint on July 25, 2025, (D.E. 12), it was dismissed without prejudice.  (D.E. 13.)  Plaintiff then submitted a second amended complaint, which is the operative pleading discussed here.  The Court later dismissed part of the second amended complaint with prejudice, leaving Jones and Dr. Fowler as the only two remaining defendants.  (D.E. 15.)

As to Dr. Fowler, Plaintiff claims that, while acting under color of state law, the physician "showed disregard for [P]laintiff's follow-up treatment plan despite ongoing complications." (D.E. 14 at PageID 243.)  Dowell specifically contends that Defendant's "failure to acknowledge Plaintiff's continuing pain stemming from his abdomen and hemorrhoid(s) pains along with constipation after returning from [the] hospital plus [his] delaying and denying [P]laintiff's treatment plan for surgical appendectomy and fiber diet caused [him] to further suffer complications to the point of developing a megacolon."  (*Id.*)  Dowell avers that Dr. Fowler's actions "constituted deliberate indifference toward [P]laintiff's serious medical needs in violation of the Eighth Amendment."  (*Id.*)  Plaintiff seeks the Corut to find that Defendant's actions interfered with Plaintiff's treatment plan and contributed to the spread of infection, and his failure to acknowledge Plaintiff's ongoing abdominal pains to be deliberate indifference in violation of the Eight Amendment.  (*Id.* at PageID 245.)  As a result, Dowell seeks $100,000 in compensatory

damages for his physical, mental, and emotional injuries; $100,000 in punitive damages; and any other relief that the Court deems necessary in the interests of justice. (*Id.* at PageID 246.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The district court's task when presented with a Rule 12(b)(6) motion, which permits dismissal for "failure to state a claim upon which relief can be granted," is a limited one—requiring it to determine "whether the claimant is entitled to offer evidence to support [its] claims," not to decide "whether a plaintiff will ultimately prevail." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In completing its task, the court is to "view the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and look to see whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1079 (6th Cir. 2022) (internal quotation marks and citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A Rule 12(b)(6) movant "has the burden of proving that no claim exists." *Tenn. Valley Auth. v. Fire Star Energy Res., LLC*, 749 F. Supp. 3d 918, 921 (E.D. Tenn. 2024) (quoting *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008)). This burden is one of "explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Id.* (quoting *Metro Gov't of Nashville & Davidson Cnty.*

*v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024)).  "A complaint should only be dismissed if it is clear to the court that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)) (internal quotation marks omitted).

Generally, matters outside the pleadings are not to be considered on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment pursuant to Federal Rule of Civil Procedure 56.  *Edwards v. Tenn. Valley Fed. Credit Union*, No. 1:23-cv-233, 2024 WL 2981180, at *3 (E.D. Tenn. June 13, 2024) (quoting *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).  However, a district court may consider "exhibits attached to the complaint . . . [if] they are referred to in the complaint and are central to the claims contained therein."  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

Lastly, pro se complaints are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

III.    ARGUMENTS OF THE PARTIES AND ANALYSIS

Count I – § 1983 Claim Based on Deliberate Indifference Under the Eighth Amendment

a.    § 1983 Claim

42 U.S.C. § 1983 provides that "[e]very person who, under color or any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  To state a claim under § 1983, a plaintiff

must allege (1) a deprivation of rights under the Constitution or federal law, and (2) that the deprivation was caused by a person acting under color of state law. *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023).

Plaintiff pleads that Dr. Fowler acted under color of state law when he deprived him of his rights under the Eighth Amendment of the Constitution. (D.E. 14 at PageID 243.) Defendant contends that Plaintiff has failed to plead sufficient facts to establish a deprivation of Plaintiff's rights under the Eighth Amendment. (D.E. 39 at PageID 479.) Dr. Fowler does not contest that he acted under color of state law.

b.      Eighth Amendment

The Eighth Amendment "protects all people from 'cruel and unusual punishments.'" *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting U.S. Const. amend. VIII.). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference to a prisoner's need for medical attention "suffices for a claim under 42 U.S.C. § 1983." *Id.* (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). This indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

The Eighth Amendment deliberate indifference framework requires both an objective and subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the objective aspect, the prisoner must have a "sufficiently serious" medical need. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also id.* (requiring the prisoner to show "that he is incarcerated under conditions posing a substantial risk of serious harm").

Under the subjective aspect, the prisoner must demonstrate that prison officials have "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This state of mind is satisfied when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. An inmate must "show that the individual defendant[] (1) [was] 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) actually drew the inference; and (3) consciously disregarded the risk." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726-27 (6th Cir. 2022) (quoting *Farmer*, 511 U.S. at 837). Stated differently, a court may find deliberate indifference when "the physician is present while the inmate is in distress, that distress is communicated to the physician, and the physician purposefully ignores the distress knowing that an adverse outcome is likely to occur." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 945 (6th Cir. 2010) (citing *Gibson v. Moskowitz*, 523 F.3d 657 (6th Cir. 2008); *McCarthy v. Place*, 313 F. App'x 810, 815 (6th Cir. 2008)).

On one hand, an official may be liable if he "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. On the other, an official "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Courts examine "the prison authorities' current attitudes and conduct" when determining the subjective prong. *Helling*, 509 U.S. at 36.

Dr. Fowler does not contest that Plaintiff has satisfied the objective prong, so the Court will only address the subjective aspect.

In considering whether Plaintiff satisfied the subjective prong of the deliberate indifference analysis, the Court will examine the nine instances named in the complaint[1] when Plaintiff interacted with Dr. Fowler for the purpose of medical care, forming the basis for the instant claim.

i.    Visit on November 25, 2020

Dowell's first interaction with Dr. Fowler detailed in the Second Amended Complaint occurred on November 25, 2020. (D.E. 14 at PageID 234.) Plaintiff described to Defendant his abdominal pain over the past few weeks and visit to the hospital, during which he received antibiotics through an IV for five days. (*Id.* at PageID 233-34.) The hospital returned Dowell to prison with a follow-up treatment plan to receive four to six weeks of antibiotics, followed by surgical appendectomy. (*Id.* at PageID 234.) During his visit on November 25, Dowell inquired with Fowler about the treatment plan. (*Id.*) Dr. Fowler advised him that he had probably received sufficient antibiotics by IV while at the hospital. (*Id.*)

Based on the Second Amended Complaint, little is known about the precise details of Dowell's follow-up treatment plan. Plaintiff did not name who at Regional One Medical prescribed this plan. (*See id.*) Whether the plan was included in the records available to Fowler is unknown; the only notice about the plan contained in the complaint was Dowell's inquiry to the

---

[1] The Court will not consider any new details mentioned by Dowell in his response that do not appear in the Second Amended Complaint because "a court considering a motion to dismiss 'must focus only on the allegations in the pleadings.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)) (explaining that "allegations in the pleadings" do "not include plaintiff's response to a motion to dismiss").

physician during their November 25 visit.  (*See id.*)  Fowler did not precisely follow the plan because Dowell did not receive four to six weeks of antibiotics on December 3,[2] but he did not fully ignore it, evidenced by the thirty antibiotics Dowell received on that date.  (*Id.* at PageID 236.)

From the information presented to the Court, Defendant was not deliberately indifferent in regard to the treatment plan.  Although he did not exactly follow the plan, he provided the inmate with antibiotics the day immediately after this visit, as well as two weeks' worth in December. (*Id.* at PageID 234, 236.)[3]  Fowler based his decision on the information known to him: Plaintiff received five days of IV antibiotics in the hospital and presented with no signs of infection after returning.  (*See id.* at PageID 234 (describing that Plaintiff was on antibiotics in the hospital "until the infection eased"); D.E. 14-1 at PageID 249 (detailing that Plaintiff "was assessed by nursing staff for signs of infection" and "none [were] present.").)  Given this background information, Fowler may have believed that full adherence to the plan would have been unnecessary.  He exercised his judgment as a medical professional to chart his plan for Dowell, and "as a general matter, courts are 'reluctant to second guess the medical judgment of prison medical officials.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 313 (6th Cir. 2023) (quoting *Jones*, 625 F.3d at 944).

An important qualifier to this reluctance is that prison medical officials "may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment." *Id.* (quoting *Jones*, 625 F.3d at 944).  Fowler did not simply "provid[e] some measure of treatment," though.  A nurse found no signs of infection after assessing Dowell, and Fowler

---

[2] Dowell received thirty antibiotics on December 3.  The record reveals that he took two antibiotics daily when they were available to him.  (*See* D.E. 14 at PageID 234 (Plaintiff took antibiotics in the morning and evening on November 26); *id.* at PageID 236 (Plaintiff told Jones he had two days' worth of antibiotics remaining on December 15, meaning he took his thirty antibiotics twice per day since December 3.).)

[3] The reason for the separation in time between these two issuances was partly due to Defendant's error, which is addressed separately in the next section.  *See infra* Section III.b.ii.

administered antibiotics a day after the interaction discussed here and thirty antibiotics on December 3, along with more medications, examinations, and visits over most of the next year as described above and below. Defendant's knowledge of the inmate's past and present condition informed his reaction to the plan, so failing to exactly follow it does not signify that Fowler merely "provid[ed] some measure of treatment" that fails to escape liability. Fowler's course of care for Plaintiff demonstrates that he did not disregard the treatment plan with deliberate indifference.

Plaintiff contends that "interruption of a prescribed plan of treatment could constitute a constitutional violation," (D.E. 40 at PageID 496 (quoting *Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017)).). This proposition in *Darrah* derives from *Boretti v. Wiscomb*, in which the Sixth Circuit "found that the plaintiff had stated a claim of deliberate indifference where he alleged that, for five days, defendants refused to look at his wound or change the dressing even after several direct requests and after a sick-call slip was sent to the infirmary." *Darrah*, 865 F.3d at 368 (citing *Boretti*, 930 F.2d 1150, 1154 (6th Cir. 1991)). The instant facts are clearly distinct from those in *Boretti*: Plaintiff was sent to the hospital for his ailments, and upon his return, was served through several interactions with Fowler and other medical personnel, including the provision of over thirty antibiotics. The *Boretti* plaintiff's treatment plan was wholly ignored by doctors, but Dowell's plan instructed the physician's course of care in response to the inmate's condition. Thus, any interruption of Plaintiff's treatment plan that may have occurred is not deliberate indifference in violation of the Eighth Amendment.

### ii.    Prescription Delay on December 1, 2020

Second, a nurse informed Plaintiff on December 1, 2020, that Dr. Fowler "messed up on" his prescription, causing Dowell's antibiotic to arrive two days later than anticipated. (D.E. 14 at

PageID 235.)[4]  This came after Defendant Leslie Jones advised Plaintiff that his antibiotics would arrive on December 1.  (*Id.*)

Dowell argues that when "prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity."  (D.E. 40 at PageID 496 (quoting *Blackmore*, 390 F.3d at 899).)  However, Plaintiff has not shown that Dr. Fowler's error in causing the delay was deliberate.  Fowler's error here is more akin to negligence, not deliberate indifference.  *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Mitchell v. Hininger*, 553 F. App'x, 602, 604 (6th Cir. 2014) ("Deliberate indifference requires more than mere negligence, more than even medical malpractice. It requires something akin to criminal recklessness." (internal citations omitted)).  As a result, the two-day prescription delay by Fowler does not rise to the level of deliberate indifference.

### iii.    Visit on December 2, 2020

Third, Plaintiff visited Dr. Fowler on December 2, 2020, in regard to pain in his groin area. (D.E. 14 at PageID 235.)  In response to Plaintiff's complaints, Fowler provided him Colace stool softeners.  (*Id.*)  When Dowell asked Fowler about his antibiotic prescription, the doctor repeated his answer from his November 25 visit with Plaintiff: he had probably received sufficient antibiotics by IV while at the hospital.  (*Id.*)

Here, Fowler directly responded to Plaintiff's complaints of pain by providing stool softeners, and the next day, thirty antibiotics.  This response exhibits that the physician did not

---

[4] It is unclear how the error occurred.  Plaintiff reported that a nurse informed him, "Dr. Fowler messed upon your prescription so it had to be filled out again."  (D.E. 14 at PageID 235.)  This is the only information in the complaint about this error.

"consciously disregard[] the risk," *Westmoreland*, 29 F.4th at 726-27, or "purposefully ignore[] the distress knowing that an adverse outcome [wa]s likely to occur." *Jones*, 625 F.3d at 945.  As discussed in the first interaction, deviation from the treatment plan does not qualify as deliberate indifference because Fowler reacted to the treatment plan according to his assessment of the inmate's past and present condition.  *See supra* Section III.b.i.  In the context of the stool softeners, thirty antibiotics, and regular examinations over the next several months provided by Dr. Fowler and other medical personnel, Plaintiff cannot demonstrate Fowler acted with deliberate indifference during this visit.

If Plaintiff is expressing disagreement with the physician's course of treatment, that basis cannot sufficiently support his deliberate indifference claim.  Sixth Circuit caselaw has long held that there is a distinction between a claim about the "complete denial of medical care" and one "that a prisoner received inadequate medical treatment."  *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Selby v. Martin*, 84 F. App'x 496, 499 (6th Cir. 2003) ("[T]he record clearly reveals a competent and conscientious course of medical treatment [consisting of evaluation by a nurse and physician and instructions for daily care], and [the plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment."); *Hempstead v. Parker*, No. 3:21-CV-417-TAV-DCP, 2023 WL 4280679 at *9 (E.D. Tenn. June 29, 2023) ("When . . . a prisoner has received some medical attention and the dispute concerns the adequacy of the treatment provided, a prisoner cannot establish deliberate indifference unless his treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" (quoting *Miller v. Calhoun Cnty.*,

408 F.3d. 803, 819 (6th Cir. 2005))).   Plaintiff's disagreement with the stool softeners and antibiotics is not deliberate indifference on the part of Fowler.

iv.    Visit on March 12, 2021

Fourth, a nurse had previously told Plaintiff that he was on the list to see a doctor on March 12. (D.E. 14 at PageID 238.)  On that day, Plaintiff was unable to see a doctor because the nurses left for a funeral, so his appointment was canceled.  (*Id.*)  Dowell's supervisor at his institutional job let him return to his cell because he was not feeling well.  (*Id.*)  When Plaintiff returned to his unit, an officer directed him to the clinic, where Dr. Fowler allegedly told him, as recounted by the inmate:

> You need to stop filing all these grievances, requests and complaints and talking to the [Associate Wardens of Treatment] because it[']s not going to make your problem any better[.]  [A]fter over twenty years in the medical field[,] there's really nothing wrong with you, nothing life threatening anyways, so you need to stop running around acting like you're dying!  You need to stop telling people your appendix ruptured and something's wrong with your colon, ain't nothing wrong with you, you're just constipated, you need to stop writing all that junk down acting like you're going to have an article in the reader's digest one day.

(*Id.* at Page ID 238-39.)  Defendant then examined the inmate and informed him that he had a hemorrhoid.  (*Id.* at PageID 239.)

The Court weighs Dr. Fowler's "attitudes and conduct" when deciding the subjective aspect of Plaintiff's deliberate indifference claim.  *Helling*, 509 U.S. at 36.  Fowler's words, instructing Dowell to stop his frequent complaints, may not be the most appropriate medical advice.  Discouraging suffering prisoners from filing medical grievances is not condoned by the Court.

However, the Court is not tasked to assess the sensitivity of Dr. Fowler's language.  Rather, it must decide whether he acted deliberately indifferent in this encounter, which he did not.  This decision would have been different had he accompanied these words with a complete denial of

16

medical care.  Instead, he voiced his frustration with the inmate and then performed an examination, resulting in the diagnosis of Plaintiff having a hemorrhoid.  Dr. Fowler's subsequent examination displayed that he neither "consciously disregarded the risk," *Westmoreland*, 29 F.4th at 726-27, nor "purposefully ignore[d] the distress" presented by Plaintiff.  *Jones*, 625 F.3d at 945. An Eighth Amendment claim poses a "high bar that a plaintiff must clear," *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018), and unsympathetic remarks do not negate the subsequent care provided by Dr. Fowler as being deliberately indifferent.

Additionally, this visit was the first time mentioned in the complaint that Dr. Fowler saw Dowell after Plaintiff's visit to the emergency room on February 28, 2021.  (D.E. 14 at PageID 238.)  During that instance, Dr. Steven Hall asked the inmate about his prior visit to the hospital in November 2020, and when the physician learned that the appendectomy had not been performed, he observed that it was risky not to have the operation.  (*Id.*)  Plaintiff received a CT scan, which revealed intestinal problems, namely megacolon, likely stemming from the infection that placed him in the hospital in the prior November.  (*Id.*)

This emergency room visit was not an interaction with Dr. Fowler, but Plaintiff maintains that Defendant's delay and denial of the recommended appendectomy constituted deliberate indifference.  (*Id.* at PageID 243.)  The Court points to the decision in *Rhinehart v. Scutt*, which concludes that a "prison doctor's failure to follow an outside specialist's recommendation does not necessarily establish inadequate care."  894 F.3d at 742.  Dr. Hall stated that it would be "risky" not to have the surgery, which does not necessarily mean that the operation was "medically necessary."  (D.E. 14 at PageID 238); *Rhinehart*, 894 F.3d at 750.  Furthermore, Plaintiff does not allege or establish that Dr. Fowler received notice of Dr. Hall's recommendation, either through his medical file or direct contact with Dr. Hall.  (*See* D.E. 14 at PageID 239.)  For these reasons,

17

Defendant's failure to follow the appendectomy recommendation does not rise to the level of deliberate indifference.

v.      Visit on March 19, 2021

Fifth, on March 19, Plaintiff saw Dr. Fowler and explained that his bowel movements were not any better. (*Id.*) The physician instructed Plaintiff to increase his fiber intake. (*Id.*) When the inmate asked about receiving a fiber diet, Fowler told him, "Just drink plenty of water." (*Id.*)

The Court restates that it is "reluctant to second guess the medical judgment of prison medical officials." *Jones*, 625 F.3d at 944. Fowler's failure to prescribe a fiber diet may have been for a reason—perhaps a full fiber diet would not have been the most beneficial option for Dowell—and the Court does not substitute its judgment for that of a medical professional. Instructing Dowell to drink more water, instead of prescribing a fiber diet, does not establish "a sufficiently culpable state of mind" required for deliberate indifference. *Blackmore*, 390 F.3d at 895. Dowell's August 12 visit with a gastrointestinal specialist, who recommended a high fiber diet and a colonoscopy, (*see* D.E. 14 at PageID 240), does not change the ruling on this interaction because this later recommendation from a specialist does not substantiate Dr. Fowler's state of mind five months earlier. *See Rhinehart*, 894 F.3d at 742.

Unconnected to this specific interaction but factually related, Plaintiff cites to *LeMarbe v. Wisneski* for its contention that "[i]f knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not simply ignored." (D.E. 40 at PageID 497 (quoting *LeMarbe*, 266 F.3d 429, 439 (6th Cir. 2001)).) The interactions discussed throughout this order demonstrate that Dr. Fowler provided more than only "an aspirin and an enema;" he provided multiple examinations and treatments over several interactions across ten

18

months of care. This care may have been unsuccessful because Plaintiff's pain lingered for months, but it was not deliberately indifferent. Additionally, the Sixth Circuit has more recently held that an "inmate is entitled to adequate medical care, not the best care possible." *Rhinehart*, 894 F.3d at 750 (citing *Miller*, 408 F.3d at 819). The Court recognizes that Dowell may not have received "the best care possible," but he did receive more comprehensive care than "an aspirin and an enema." As a result, the high standard of deliberate indifference was not met in this encounter.

### vi.    Visit on April 9, 2021

Sixth, on April 9, Dowell saw Defendant again with the same complaints of pain and discomfort, and the doctor informed Plaintiff that he would receive Miralax. (D.E. 14 at PageID 239.) On April 22, the nurse at the medical window informed the inmate that the prison does not receive Miralax. (*Id.*)

From the facts offered by Plaintiff, this situation appears to present nothing more than an error on the part of Dr. Fowler: he believed the prison could administer Miralax, but in reality, it did not. Plaintiff does not cite to any evidence that Fowler's failure to provide Miralax was "conscious[]," *Westmoreland*, 29 F.4th at 726-27, or "purposeful[]." *Jones*, 625 F.3d at 945. At most, Defendant's mistake in this interaction constituted negligence, which is insufficient to support a claim for deliberate indifference. *See supra* Section III.b.ii (explaining that deliberate indifference is a higher bar than mere negligence). Therefore, a mistaken determination does not rise to the level of deliberate indifference.

### vii.    Visit on June 18, 2021

Seventh, Plaintiff urinated a yellowish white liquid on June 18, 2021, and at his visit with Dr. Fowler later that morning, he provided the physician with a urine sample. (D.E. 14 at PageID

240.)  Because the sample led Fowler to believe the inmate had a medical issue, Dowell received a shot and antibiotics.  (*Id.*)

In this interaction, Plaintiff cannot successfully establish the subjective prong of his deliberate indifference claim.  The inmate brought his complaint about his urine to Dr. Fowler, who took a sample and, through a prison nurse, administered two treatments to Plaintiff.  (*Id.*)  Fowler may have "know[n] of . . . an excessive risk to inmate health," but his examination and treatments demonstrate that he did not "disregard[]" this risk.  *Farmer*, 511 U.S. at 837.  Thus, this episode does not show deliberate indifference.

### viii.    Visit on August 23, 2021

Eighth, on August 23, Plaintiff saw Dr. Fowler again and reported tight knotty feelings in his stomach whenever he ate.  (D.E. 14 at PageID 240.)

Dowell provides no further detail about this encounter in his complaint.  Because Fowler simply performed his role as a physician by hearing the complaint of the inmate, this interaction does not exhibit deliberate indifference.

### ix.    Lack of Response to Two Way Message Form in 2021

Ninth, in August 2021, Dowell sent a two-way message form to Jones and Dr. Fowler, in which he informed them that he was prescribed lactulose again, explained how lactulose made him vomit, and asked if he could receive another laxative.  (*Id.* at PageID 241.)  After several weeks of no response, Jones responded that Plaintiff would undergo a colonoscopy.  (*Id.*)  On September 27, Plaintiff was transferred to Tennessee Department of Corrections Deberry Special Needs Facility.  (*Id.*)  On October 7, he was admitted to Nashville General Hospital, where the colonoscopy was performed, and the procedure revealed intestinal and hemorrhoid problems.  (*Id.*)

Reviewing the prison medical officials' course of conduct described by Plaintiff over the approximately ten months he received care, responding to messages was not a responsibility of Dr. Fowler, who provided medical care through examinations and prescriptions. (*See id.* at PageID 235, 236, 239, 240, 241 (detailing all messages and grievances answered by wardens or administrators).) Because responding to this message evidently fell outside the scope of Fowler's role, Jones would have been the person responsible for answering it, and her delay in responding to this message does not constitute deliberate indifference on Fowler's part. As discussed in the preceding eight interactions, Dr. Fowler rendered care that, although largely unsuccessful evidenced by Plaintiff's persistent pain, did not rise to the level of deliberate indifference. His failure to reply to a message, which did not appear to be his responsibility, does not establish the culpable state of mind required for deliberate indifference.

## IV.     CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has not stated an Eighth Amendment deliberate indifference claim under § 1983 as to Dr. Fowler. Accordingly, Fowler's motion to dismiss (D.E. 38) is GRANTED. Plaintiff's motion to appoint counsel (D.E. 31) is DENIED AS MOOT. The Clerk is DIRECTED to enter judgment.

IT IS SO ORDERED this 6th day of January 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE